**Rebekah HINDS, Plaintiff,**

v.

**COMPAIR KELLOGG, Defendant.**

**No. 3:91-166.**

United States District Court,
E.D. Virginia,
Richmond Division.

Oct. 31, 1991.

John Eric Lichtenstein, Bremner, Baber & Janus, Richmond, Va. and Harry A. Wilson, Jr., Wilson & Kehoe, Indianapolis, Ind., for plaintiff.

Edward Joseph Fuhr, Matthew James Calvert, James Edward Farnham, Hunton & Williams, Richmond, Va., for defendant.

## MEMORANDUM OPINION

RICHARD L. WILLIAMS, District Judge.

This matter is before the Court on defendant's motion for summary judgment, pursuant to Fed.R.Civ.P. 56. The defendant has also made a motion to quash the plaintiff's notices to depose. As discussed more fully below, the defendant's motion for summary judgment is GRANTED and the case is hereby DISMISSED WITH PREJUDICE. The motion to quash is, therefore, MOOTED.

## FACTUAL BACKGROUND

This case arises from an industrial accident that occurred at the U.S. Mineral Products plant in Huntington, Indiana. The plant produces and ships rockwool insulation. The accident occurred on July 27, 1989, at approximately 2:00 a.m., when a 1974 air compressor made by Kellogg American, a predecessor to CompAir Kellogg, allegedly burst into flames. An employee of U.S. Mineral, Gregory W. Hinds, was fatally burned.

The air compressor, a Model KRS75W rotary screw compressor designed in 1970, was sold by Kellogg American on March 23, 1978 to the Wayne–Vaughn Equipment Company in Fort Wayne, Indiana. On or about April 23, 1978, Kellogg American shipped the air compressor to Wayne–Vaughn's customer, Guardian Industries, in Huntington, Indiana. Guardian Industries sold its Huntington plant, including the air compressor, to U.S. Mineral in 1982. In 1984, U.S. Mineral bought a rebuilt "air end" from CompAir Kellogg and in 1988, it purchased an oil/air separator as replacement components for the air compressor. From the time U.S. Mineral purchased the Huntington plant until the explosion, the air compressor remained at U.S. Mineral where it was serviced and repaired solely by U.S. Mineral's maintenance staff.

In April, 1991, almost two years after the accident, the decedent's widow filed a complaint against CompAir. Ms. Hinds' Amended Complaint states three claims for relief: Count I asserts a claim of negligence; Count II asserts a claim of strict product liability; and Count III asserts a claim of breach of implied warranty. Each of these claims is premised on the allegation that the fire which resulted in Mr. Hinds' death was caused by one or more defects in the air compressor. Specifically, plaintiff and her experts allege the following defects in the air compressor:

1. CompAir failed to properly design and perform an accurate hazard analysis;

2. CompAir failed to properly design the requirements for the failed check valve;

3. CompAir failed to monitor temperature at the output of the oil/air separator;

4. CompAir failed to properly instruct as to the uses of the air compressor;

5. CompAir failed to warn against critical hazards on the compressor; and

6. CompAir failed to adequately inspect the check valve.

Plaintiff's Second Supplemental Answers to First Interrogatories, No. 7. Several of these defect theories were reiterated during the depositions of plaintiff's experts on October 1–3, 1991. The plaintiff's primary contention was that the air compressor, as it was originally designed, did not include a temperature monitoring device designed to shut the compressor down in the event of a fire in the oil/air separator. *Id.* at No. 7(e). It was not until October 3, 1991, when plaintiff served her Fifth Supplemental Answers to CompAir's Discovery Requests did the plaintiff allege that the replacement parts for the air compressor were defective. CompAir Reply Memorandum at 18 and Supp.App. at 2.

## ARGUMENT

■ The plaintiff and defendant agree on a number of important issues. First, because the Court's jurisdiction is based on diversity of citizenship, the Court must apply Virginia's choice of law rules. *Klaxon v. Stentor Manufacturing Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). The parties agree that Virginia's choice of law rules require that Virginia law applies to all issues that are procedural and relate solely to the remedy, while Indiana law, the law of the place of the accident, controls on all substantive issues.

The plaintiff and the defendant agree that since the law of Indiana applies to this case, Count III of the plaintiff's Amended Complaint (Breach of Implied Warranty) should be dismissed from this action because such a claim is duplicitous with a claim of strict product liability. Thus, what is at issue is whether summary judgment is appropriate as to the plaintiff's claims of negligence and strict product liability.

After this, the plaintiff and the defendant part company. Two fundamental issues are in dispute:

1. Whether Indiana's ten year statute of repose is substantive and, therefore, serves to bar plaintiff's claims; and

2. Whether, assuming that Indiana's statute of repose applies, the purchase of important replacement parts raises an issue of material fact as to when the ten year period should run.

### A. The Statute of Repose

■ In 1978, Indiana enacted its comprehensive Product Liability Act. Ind.Code Ann. § 33–1–1.5–1 *et seq.* (West 1991). Section Five of the Act provides that no negligence or strict liability action may be brought with respect to a product more than ten years after it was delivered to its initial user.[1] The Indiana Supreme Court has held that this includes allegations of a failure to warn. *Dague v. Piper Aircraft Corp.*, 275 Ind. 520, 418 N.E.2d 207, 212 (1981) (on certification from the 7th Cir.).

■ *Dague v. Piper Aircraft Corp.* is the seminal Indiana case on this statute. *Dague* held that the Product Liability Act's ten year limitation provided an outer cutoff for all product liability actions. *"[N]o cause of action would exist on any such product liability theory after ten years." Id.* (emphasis in original). Thus, like Virginia's statute of repose, Va. Code § 8.01–250, Indiana's product liability statute of repose is triggered by an event unrelated to the accrual of a cause of action—the date of delivery to the initial user. For a claim to be actionable, the plaintiff must bring his suit within two years from the accrual of the injury (the statute of limitations), *and* his claim must be brought within ten years of the delivery of the product

---

1. In its entirety, section five provides:
 (a) This section applies to all persons regardless of minority or legal disability. Notwithstanding IC 34–1–2–5, it applies in any product liability action in which the theory of liability is negligence or strict liability in tort.
 (b) Except as provided in section 5.5 of this chapter, a product liability action must be commenced within two (2) years after the cause of action accrues or within (10) years after the delivery of the product to the initial user or consumer. However, if the cause of action accrues at least eight (8) years but less than ten (10) years after that initial delivery, the action may be commenced at any time within two (2) years after the cause of action accrues.
 Ind.Code Ann. § 33–1–1.5–5. (West 1991).

to its initial user or consumer (the statute of repose). *Id.* 418 N.E.2d at 210; *see also, Wilson v. Studebaker–Worthington, Inc.,* 699 F.Supp. 711, 716 (S.D.Ind.1987).

Thus, because Mr. Hinds' fatal injuries did not occur until more than eleven years after the initial delivery of the air compressor, the plaintiff's negligence and strict liability claims are not actionable if Indiana's statute of repose applies. The question, then, is whether the statute of repose is part of the substantive law of Indiana or whether it is merely procedural, in which case it would not apply.

 The court of the forum state determines according to its own conflict of law rules whether a question of law is substantive or procedural. *Willard v. Aetna Casualty & Surety Co.,* 213 Va. 481, 483, 193 S.E.2d 776, 778 (1973). To determine whether a foreign state's laws are substantive or procedural, Virginia law requires a court to "follow the courts of that state." *Norman v. Baldwin,* 152 Va. 800, 807, 148 S.E. 831, 833 (1929).

The plaintiff attempts to characterize Indiana's statute of repose as a procedural limitation. She does this by noting that many Indiana courts have held statutes of limitation to be procedural and go only to the remedy. Furthermore, she points out that because the provision contained in Ind. Code Ann. § 33–1–1.5–5 is entitled "Statute of Limitations," the Indiana legislature clearly intended for the act to be a statute of limitations. The plaintiff also notes that a couple of Indiana courts have referred to the ten year limitation as a statute of limitations.

Finally, the plaintiff cites *Kovach v. Newbury Industries, Inc.,* 1983 WL 6002 (Ohio App.1983), in which the Ohio Court of Appeals held that the ten year limitation should be construed as part of Indiana's procedural law and thus not applicable to a case brought in a foreign jurisdiction.[2]

Plaintiff's argument that Indiana's statute of repose is procedural is severely flawed. The plaintiff apparently fails to realize that there is a fundamental difference between statutes of limitations and statutes of repose. All of the cases cited by the plaintiff, which stand for the unremarkable proposition that statutes of limitation are "generally procedural," relate to traditional statutes of limitation that run from accrual of a cause of action. The plaintiff does not cite a single published opinion where a statute of repose was held to be procedural.

 Clearly, the Indiana Product Liability Act contains a statute of limitations. However, numerous cases have held that the Act contains both a 2 year statute of limitations *and* a 10 year statute of repose. *See, e.g., Covalt v. Carey Canada, Inc.,* 543 N.E.2d 382, 386 (Ind.1989) (the "purpose" of Indiana's ten year product liability "statute of repose [is] that of recognizing the improvements of product design and safety that come with time").

Statutes of repose, unlike statutes of limitation, are substantive. In particular, Indiana's state and federal courts have recognized that the ten year statute of repose is a part of the substantive law of Indiana.[3] For instance, in *Covalt v. Carey Canada, Inc.,* the Indiana Supreme Court discussed the substantive nature of Indiana's and other state's statutes of repose: "The statute acquires its substantive quality by potentially barring a right of action before the injury has occurred if the injury occurs subsequent to prescribed time period...." *Id.* (quoting *Berns Construction Co. v. Miller,* 491 N.E.2d 565, 570 (Ind.App.1986).

Virginia law dictates that the law of the place of the accident "govern[s] all matters

---

**2.** This case is unpublished. It should be noted, although plaintiff makes no mention of it, that Ohio Supreme Court Rules limit and impose restrictions on the precedential weight and use of unpublished opinions.

**3.** Federal courts have recognized the substantive nature of Indiana's statute of repose. *See, e.g., Bowman v. Niagara Machine and Tool Works,*

*Inc.,* 832 F.2d 1052, 1056 (7th Cir.1987) (noting that the Indiana legislature has declined to extend certain substantive rights to a group of persons who cannot bring claims within the ten year period); *Knox v. AC & S, Inc.,* 690 F.Supp. 752, 758–59 (S.D.Ind.1988) ("A statute of repose serves a function distinct from the one served by the statute of limitations.").

going to the basis of the right of action itself." *Joynes v. Coard,* 175 Va. 571, 580–81, 9 S.E.2d 454, 458 (1940). Under this principle, it cannot seriously be disputed that Indiana's statute of repose is applicable to this case. Nothing could relate more fundamentally to the basis of the plaintiff's action than a statute which bars a right of action even before the injury has occurred.[4]

■ In sum, applying Virginia conflict of law rules, it is clear that Indiana substantive law governs this dispute. Indiana state and federal courts have recognized that the Indiana Product Liability Act contains a ten year statute of repose that affects the substantive rights of litigants. Thus, assuming that there is no genuine issue of material fact relating to when the "delivery" of the air compressor occurred, CompAir is entitled to summary judgment on the plaintiff's claims for negligence and strict product liability.

### B. *Whether the Sale of Replacement Parts Constitute a New Delivery of the Air Compressor*

In reviewing the evidence as it relates to a motion for summary judgment, the court must view all evidence in the light most favorable to the nonmoving party. *Shealy v. Winston,* 929 F.2d 1009 (4th Cir.1991). However, to defeat a motion for summary judgment:

> an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary

judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e). Plaintiff's evidence in this case must, therefore, be "significant" and "probative." *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968).

The plaintiff alleges that the CompAir air compressor was essentially rebuilt when U.S. Mineral bought a replacement "air end" from CompAir–Kellogg in 1984 and when it purchased an oil/air separator in 1988. Ms. Hinds has conceded that the air compressor was purchased by Guardian Industries on March 23, 1978, and, therefore, the 10 year statute of repose unquestionably bars all of the original defect claims of inadequate design, improper instructions, and failure to warn. In order to overcome this bar, the plaintiff contends that the question of whether the air compressor in its reconditioned state constituted a new introduction into commerce is one for the jury and cannot be resolved on summary judgment. The plaintiff cites two federal district court cases, *Denu v. Western Gear Corp.*[5] and *Fugate v. AAA Machinery & Equipment Co.,*[6] for the proposition that when a piece of machinery becomes substantially rebuilt or reconditioned, a new statute of repose begins to run for the purpose of a products liability action.

■ However, the plaintiff mischaracterizes the air compressor in suggesting that it has been "substantially rebuilt" and that the sale of the replacement parts constituted a "delivery" of a new air compressor. Besides the air end and oil/air separator, the compressor contains an air filter system, an air inlet control system, an electric

---

**4.** The Fourth Circuit has consistently stated that statutes of repose are inherently substantive. *See, e.g., Goad v. Celotex Corp.,* 831 F.2d 508, 511 (4th Cir.1987) ("The distinction between statutes of limitation—and statutes of repose corresponds to the distinction between procedural and substantive laws."), *cert. denied,* 487 U.S. 1218, 108 S.Ct. 2871, 101 L.Ed.2d 906 (1988). In addition, the Virginia Supreme Court has stated that while traditional statutes of limitation are procedural, statutes of repose

are substantive. *See, Commonwealth v. Owens–Corning Fiberglas Corp.,* 238 Va. 595, 598–99, 385 S.E.2d 865, 867 (1989); *School Board v. U.S. Gypsum Co.,* 234 Va. 32, 37, 360 S.E.2d 325 (1987) ("[A] 'statute of repose' is intended as a substantive definition of rights as distinguished from a procedural limitation on the remedy used to enforce rights.").

**5.** 581 F.Supp. 7 (S.D.Ind.1983).

**6.** 593 F.Supp. 392 (E.D.Tenn.1984).

motor, piping, oil filtering devices, safety devices, an oil cooler, valves, pressure gauges, electrical circuitry, and control devices. Although two components were replaced, the air compressor never went through any substantial overhaul or reconditioning, and CompAir never reacquired possession, custody, or control of the air compressor after it was sold in 1978. By contrast, in the cases cited by the plaintiff, the machinery at issue was reacquired by the manufacturer, completely reconditioned, and then resold to new customers. None of this happened here. Neither *Denu* nor *Fugate* stand for the proposition that delivery of replacement parts by a manufacturer, years after the sale of the original product and years after the transfer of title, custody, and control, transforms the original machine into a "new" product. *See, Reese v. National Mine Service Co.*, 672 F.Supp. 1116, 1117 (S.D.Ill. 1987) (holding in regard to Illinois' statute of repose that the reconditioning of a mine shuttle car with replacement parts that "did not alter or modify the products' design" did not trigger a new ten year limitation period).

■ Even if the air compressor is not determined to have been rebuilt, the plaintiff maintains that the ten year period should be extended under the Indiana statute of repose where the replacement parts were defective and where they were a proximate cause of the accident. The plaintiff contends that the oil/air separator was directly related to the original product defect, the failure to monitor temperature within the separator itself, and was thus the proximate cause of the accident. The part was defective, according to the plaintiff, because the manufacturer failed to warn about its potential dangers.

A case that is illustrative and very similar to this one is *DeHoyos v. John Mohr & Sons*, 629 F.Supp. 69 (N.D.Ind.1984), *aff'd sub nom, Black v. Henry Pratt Co.*, 778 F.2d 1278 (7th Cir.1985). *DeHoyos* was a wrongful death action brought by survivors of workers killed by the release of carbon monoxide from a blast furnace in 1979. It was undisputed that the proxi-mate cause of the accident could be traced to (1) the malfunction of the stove combustion fan and (2) the failure of the back-up shutoff valve. *Id.* at 76. Among other things, the plaintiffs alleged that the manufacturer was liable because the back-up shutoff valve was designed and made in a defective and unreasonably dangerous condition. The accident occurred more than ten years after delivery of the original shutoff valves, but within ten years of the delivery of certain replacement parts.

The district court held that the sale of the replacement parts for the valve mechanism did not extend or toll Indiana's statute of repose because the replacement parts themselves were not the proximate cause of the accident. And the plaintiff could not circumvent the statute of repose by asserting that there was a failure to warn in connection with the sale of the replacement parts. *Id.* at 79.

On appeal to the Seventh Circuit, the plaintiffs contended that the sale of the replacement parts without proper warnings rendered those parts unreasonably dangerous and thus defective under Indiana law. *Black*, 778 F.2d at 1282. The Seventh Circuit reasoned that under Indiana's Product Liability Act, the plaintiffs were required to show "that the defect was the cause which, in natural and continuing sequence, unbroken by any efficient intervening cause, produced the result complained of and without which the accident would not have occurred." *Id.* at 1282–83 (quoting *Craven v. Niagara Machine & Tool Works, Inc.*, 417 N.E.2d 1165, 1170 (Ind.Ct. App.1981)). Furthermore, the Seventh Circuit ruled that liability could be imposed upon the manufacturer of a component "only where the component was in fact unreasonably dangerous or defective, and where the component was the cause of the injury complained of." *Id.* at 1283.

Still, the plaintiffs maintained that sale of essential parts without warning as to possible dangers rendered those replacement parts dangerous and defective. The Seventh Circuit disagreed and held that the manufacturer "had a duty to issue warnings when it sold the replacement parts in 1972, 1973 and 1978 *only* if the valve bearings were in fact defective and thus dan-

gerous for the use for which they were supplied." *Id.* (emphasis in original). Because those parts were not defective, there was no duty to give a warning upon the sale of the parts.

As in *DeHoyos,* plaintiff's argument in regards to the sale of the replacement parts in 1984 and 1988 is not persuasive. Ms. Hinds' claim from the outset has been that the air compressor was defective because it lacked a temperature monitoring device on the output of the oil/air separator that would have detected a fire in the separator and shut down the machine prior to the explosion. *See,* Second Supplemental Answers, No. 7(a), (c), and (g). There is no significant evidence of any defect in the replacement parts other than the failure to warn. Indeed, such a contention appears to be refuted by the plaintiff's own experts. *See, e.g.,* CompAir's Reply Memorandum, Supp.App. 4 at 12–13.

It is obvious from the plaintiff's discovery responses that no one really knows what caused the fire.[7] Thus, it cannot be said that the replacement parts were defective or that they contributed to the accident. Under the rule set forth by the Seventh Circuit in *Black,* the plaintiff cannot extend or toll the ten year statute of repose where she has produced no probative evidence that the replacement parts were defective or unreasonably dangerous and that they somehow caused Mr. Hinds' fatal injuries.

In addition, Ms. Hinds' failure to warn contention is identical to the failure to warn theory asserted in regards to the original sale. The failure of the manufacturer to warn the consumer of the alleged dangers of not having a temperature monitoring device relates to the original sale, not to the purchase of replacement parts. *See, Dague v. Piper Aircraft Corp.,* 418 N.E.2d at 211 (rejecting the argument that allegations of a continuing duty to warn avoid the bar of Indiana's statute of repose). As the *Black* court ruled, where there is no showing that the replacement parts were unreasonably dangerous or defective, the manufacturer had no additional duty to warn the customer independent of any possible duty which existed in connection with the original sale. *Black,* 778 F.2d at 1283.

Ms. Hinds' new allegations concerning the replacement parts are nothing more than a rehashing of the original defects that existed in the machine. The plaintiff never mentioned any problems about the replacement parts until she served her Fifth Supplemental Answers to CompAir's Discovery Requests on October 3, 1991. During their depositions, plaintiff's experts never identified any defects in the replacement parts, nor any theory of causation associated with the replacement parts. These experts confirmed that there were no defects in the air compressor or its components other than those advanced in plaintiff's Second Supplemental Answers, No. 7.

Although plaintiff has attempted at a late date to raise a genuine issue of material fact by alleging that the replacement parts issued inside the ten year repose period were defective, the Court rejects this contention as Plaintiff has found no hard evidence to support it, despite the fact that Ms. Hinds has had more than two years to conduct discovery.

### C. *Motion to Quash*

Also pending before the Court is the defendant's motion to quash the plaintiff's deposition notices of certain witnesses. This motion is mooted by the Court's decision to grant summary judgment and to dismiss this action.

### CONCLUSION

Virginia conflict of laws rules require that Indiana state law should govern the substantive issues of this dispute. The Indiana Product Liability Act contains a ten year statute of repose which bars any negligence or product liability action brought more than ten years after the product was initially introduced into com-

---

**7.** The plaintiff herself asserts that:
 The source of ignition for this fire may never be known ... [Nevertheless,] with proper monitoring of temperature ... at the output of the oil/air separator the [fire] in the separator could have been detected and the machine shut down....
Second Supplemental Answers, No. 7 at p. 5.

merce. Indiana, Virginia, and Fourth Circuit law recognize that statutes of repose are substantive provisions and not merely procedural. Thus, because Mr. Hinds' accident did not occur until eleven years after the defendant's air compressor was sold, CompAir is entitled to summary judgment as to the plaintiff's claims of negligence and strict product liability. Furthermore, the plaintiff agrees that her action for breach of implied warranty should be dismissed.

Plaintiff cannot circumvent the ten year statute of repose by making the unsupported claim that important replacement parts were defective and helped cause the accident. Plaintiff has failed to set forth specific facts and evidence to show that the replacement parts were defective. In addition, such a theory is inconsistent with the crux of the plaintiff's case: that although the source of the fire is unknown, a temperature monitoring device should have been installed originally which would have detected a fire before the compressor exploded. Finally, failing to issue a warning in connection with the sale of replacement parts where there is no showing that the parts themselves were dangerous for the use in which they were intended does not serve to extend or toll the statute of repose.