# CIRCUIT COURT OF PRINCE WILLIAM COUNTY

Catherine A. Eccleston

     v.

Patriot Harley Davidson, Inc., et al.

Case No. (Law) 59782

Robert G. Eccleston,
Guardian and Conservator,
who sues for and on behalf of
Catherine A. Eccleston,
incapacitated

     v.

Patriot Harley Davidson, Inc., et al.

Case No. (Law) 65790<br>(Specially Consolidated)[1]

---

[1] In Law No. 59782, the named Plaintiff is Catherine A. Eccleston. In Law No. 65790, the named Plaintiff is Robert G. Eccleston, Guardian and Conservator, who sues for and on behalf of Catherine A. Eccleston, incapacitated. For purposes of this letter opinion, Catherine A. Eccleston shall be referred to by name and Plaintiff indicates Robert Eccleston, guardian and conservator for Catherine Eccleston, who sues for and on her behalf.

BY JUDGE ROSSIE D. ALSTON, JR.

June 15, 2006

This matter came before the Court on January 4, 2006, for hearing on multiple motions filed by the parties. At that time, the Court continued the matter for hearing on a preliminary issue regarding the alleged incapacity of Catherine A. Eccleston (hereinafter "Mrs. Eccleston") from the time of the incident that is the subject of this litigation to the present and the implication of such to the validity of Law Number 65790. The parties in advance of the hearing submitted memoranda in support of their respective positions as to the preliminary issue before the Court, and on May 23, 2006, May 24, 2006, and June 15, 2006, the parties presented testimony, evidence, and argument to the same, including Defendant's, Patriot Harley Davidson, Inc.'s, Special Plea in Bar.

The Code of Virginia (1950), as amended, § 8.01-243(A) provides that every action for personal injuries shall be brought within two years after the cause of action accrues unless otherwise provided by statute. Further, the Code of Virginia (1950), as amended, § 8.01-230 states that "in every action for which a limitation period is prescribed, the right of action shall be deemed to accrue and the prescribed limitation period shall begin to run from the date the injury is sustained in the case of injury to the person or damage to property. . . ."

Plaintiff, the guardian and conservator for Catherine Eccleston, commenced a lawsuit for and on behalf of Mrs. Eccleston by filing the Motion for Judgment in Law Number 65790. In the Motion for Judgment, Plaintiff avers that Mrs. Eccleston was injured in a motorcycle accident on July 1, 2001. Thus, in the instant case, the alleged cause of action is for personal injuries.

Under the general statute of limitation, the cause of action accrued and the prescribed limitation period began to run on July 1, 2001, the alleged date of injury. The record indicates that Plaintiff filed the Motion for Judgment in Law Number 65790 on June 9, 2005. It is evident that Plaintiff filed the cause of action in excess of two years after the cause of action accrued and the limitation period began to run under the general statutory provision.

The Code of Virginia (1950), as amended, § 8.01-229(A)(2)(b) reads in pertinent part, "if a person entitled to bring any action is at the time the cause of action accrues . . . incapacitated, such person may bring it within the prescribed limitation period after such disability is removed." The section also provides that "if a person becomes incapacitated after the limitation period

begins to run, but before the limitation period expires, the time during which the person is incapacitated shall not be computed as any part of the period within which the action must be brought."

In addition, § 8.01-229(A)(2)(b) provides that "where a conservator, guardian, or committee has been appointed for an incapacitated person, an action may be commenced by such conservator, committee, or guardian before the applicable period of limitation or within one year after his appointment, whichever occurs later." Finally, the section reads, "a person shall be deemed incapacitated if he is so adjudged by a court of competent jurisdiction, or if it shall otherwise appear to the court or jury determining the issue that such person is or was incapacitated within the prescribed limitation period."

Plaintiff states that Mrs. Eccleston is currently and was at all times since the alleged incident in 2001 incapacitated. Therefore, Plaintiff asserts that pursuant to § 8.01-229(A)(2)(b), the applicable statute of limitation is tolled until such time as the disability is removed. Plaintiff further provides that, on November 12, 2004, upon hearing of the Petition for Appointment of a Guardian and Conservator for Catherine A. Eccleston filed in the Circuit Court of Fairfax County, the court appointed Robert G. Eccleston as guardian and conservator for Mrs. Eccleston. Hence, Plaintiff argues that this action filed on June 9, 2005, within one year after his appointment on November 12, 2004, was filed timely in accordance with the Section 8.01-229(A)(2)(b).

The Court takes judicial notice that the Circuit Court of Fairfax County declared Mrs. Eccleston incapacitated on November 12, 2004. It is the understanding of the Court that, as a result of Mrs. Eccleston's having been adjudicated incapacitated by a court of competent jurisdiction, specifically the Circuit Court of Fairfax County, Mrs. Eccleston is deemed incapacitated for purposes of analysis under the Code of Virginia (1950), as amended, § 8.01-229(A)(2)(b). Further, upon the evidence as presented, the Court by clear and convincing evidence otherwise finds that Mrs. Eccleston is incapacitated and had been during the entirety of the prescribed limitation period.

Upon review of the evidence admitted at the hearing, including but not limited to the depositions of the medical experts, the testimony of Plaintiff, Mrs. Eccleston's son, and Stephen T. Conrad, Esq., and the videotape of Mrs. Eccleston, as reviewed in its entirety, the Court has no doubt that Mrs. Eccleston is currently incapacitated and had been during the entirety of the prescribed limitation period. As a result of the accident that is the subject of this litigation, Mrs. Eccleston suffered a traumatic brain injury. Her physical and mental faculties are severely impaired. As a result, she is and has been incapable of receiving and evaluating information effectively or responding to people, events, or environments to such an extent that she lacks the capacity to meet the essential requirements for her health, care, safety, and therapeutic

needs without the assistance or protection of another. Further, she is and has been incapable of managing property or financial affairs or providing for her own support without the assistance or protection of another.

It is also clear from the record that the Circuit Court of Fairfax County appointed Plaintiff, Robert G. Eccleston, as guardian and conservator for Mrs. Eccleston on November 12, 2004, and that Law Number 65790 was filed on June 9, 2005, within one year of the appointment. On its face, it appears that Plaintiff's cause of action filed for and on the behalf of his ward was filed timely in accordance with § 8.01-229(A)(2)(b).

Defendants argue that, even though on November 12, 2004, the Fairfax County Circuit Court appointed a guardian and conservator for Mrs. Eccleston, "on January 9, 2004, Mrs. Eccleston executed a General Durable Power of Attorney, which made the plaintiff her "agent" and "attorney in fact," among other powers bestowed. Upon being made Mrs. Eccleston's "agent," the plaintiff automatically became Catherine Eccleston's conservator as well." Thus, Defendants state that, pursuant to the Code of Virginia (1950), as amended, § 8.01-229(A)(2)(b), and in light of the Code of Virginia (1950), as amended, § 37.2-1009 "the deadline for the plaintiff to file Law No. 65790 was January 9, 2005."[2] Consequently, the filing of the Motion for Judgment in Law Number 65790 six months later on June 9, 2005, Defendants argue, was untimely, and the matter should be dismissed.

Moreover, Defendants argue that, despite the fact that Mrs. Eccleston is deemed to be incapacitated, as a result of the Fairfax County Circuit Court having adjudged her to be incapacitated, the existence of certain documents and evidenced transactions, as presented to the Court, would require Plaintiff to be estopped from taking advantage of the tolling provisions. Defendants assert that Plaintiff ratified the General Durable Power of Attorney and thus should be bound to file within one year from the date of appointment thereunder, i.e., one year from January 9, 2004. Again, Defendants argue that the filing of the Motion for Judgment in Law Number 65790 on June 9, 2005, was untimely, and the matter should be dismissed.[3]

---

[2] See Defendants' Summary of Evidence To Be Presented at May 23, 2006, Hearing on page 10 at paragraph 3 citing as authority the Code of Virginia (1950), as amended, § 37.2-1009; see also Defendant's, Patriot Harley Davidson, Inc.'s, Special Plea in Bar, which references Defendants' Summary of Evidence To Be Presented at May 23, 2006, Hearing.

[3] See Defendants' Summary of Evidence To Be Presented at May 23, 2006, Hearing; see also Defendant's, Patriot Harley Davidson, Inc.'s, Special Plea in Bar, which references Defendants' Summary of Evidence To Be Presented at May 23, 2006, Hearing.

While the Court has some grave concerns regarding the propriety of certain actions purportedly "undertaken" by Mrs. Eccleston or those who have an expressed concern about her interest, these ultra vires, opportunistic, improvident, and imprudent actions cannot serve to make what are ill-considered and feckless maneuvers supposedly for her benefit to have near fatal legal implications. While the Court chooses to clearly express its concerns regarding the propriety of certain circumstances in the legal procedural history of the matter, the Court does believe that Mr. Eccleston's actions were not motivated by any ill-motives, but were done for what he believed was his wife's best interest.

Upon consideration of the arguments of the parties, the testimony of the witnesses, including the depositions as submitted,[4] the evidence presented, and the law, it is the finding of this Court that for purposes of analysis of the tolling provisions that Mrs. Eccleston is deemed incapacitated by statute, and it has been otherwise demonstrated by clear and convincing evidence that that Mrs. Eccleston presently is and has been incapacitated during the entirety of the prescribed limitation period.

Defendants reliance on the application of the Code of Virginia (1950), as amended, § 11-9.1 suggesting that the power of attorney "executed" during Mrs. Eccleston's disability must also be rejected. This section of the Code of

---

[4] There seems to be some real confusion on the part of Plaintiff's counsels as to the use and depth of the witness depositions taken for the purpose of assisting the Court in making its single issue determination herein. By deposing the witnesses in this matter for this hearing, Defendants are *not* foreclosed from taking the depositions of these witnesses for trial. Moreover, the Court has some real concern about some of the circumstances attendant to Plaintiff's counsels' questioning approach. Many of the questions Plaintiff's counsels asked over several hundred pages of deposition testimony had been asked and answered of Plaintiff's *own witnesses* time after time. This manner of questioning style is redundant, cumulative, and thus, inappropriate. In addition, henceforth all objections will be precise and succinct. "Speaking objections" and testimony by counsel will not be acceptable. Finally, the Court notes that one of Plaintiff's counsels had the temerity to question the morality of one of Defendants' counsel during what the Court considered legitimate cross-examination during deposition. This is also unacceptable to the Court. Clearly, this lack of decorum will not be tolerated during the hearings leading up to and ultimately the trial of the matter. This case will be conducted in a manner consistent with the highest standards of civility and professionalism at all times. If any counsel is of the view that he cannot meet this standard, he might want to consider a lesser role in the presentation of the evidence or run the risk of the Court making a public admonition articulating this expectation. In this regard, all counsel should be aware that the disrespectful conduct and attitudes evident in many of the depositions conducted to date will not be countenanced by this Court.

Virginia (1950), as amended, merely recognizes that a power of attorney executed prior to a declarant's disability does not terminate notwithstanding any subsequent disability, incompetence, or incapacity of the principal.

The core analysis supporting this decision while not absolutely apposite is discussed in the doctrine of *contra non valentem*. *Contra non valentem* is a judicially created exception to the general rules of prescription. It is recognized that the basis for the doctrine is equity and justice which demands that, under certain circumstances, prescription should be suspended because the plaintiff is effectively barred from enforcing his rights for reasons external to his own will. Cf. *Reynolds v. Batson*, 11 La. Ann. 729 (1856); *Wimberly v. Gatch*, 635 So. 2d 206 (1994); *Spruiell v. Ludwig*, 568 So. 2d 133 (La. App. 1990). The Court's determination here is based on a statutory interpretation; however, the principle warranting the protection of one found or deemed to be incompetent or legally incapacitated is due great deference.

After having been appointed as Mrs. Eccleston's guardian and conservator, Plaintiff filed Law Number 65790 within one year of his appointment. Thus, the Court finds that Plaintiff timely commenced the cause of action in Law Number 65790. Accordingly, it is the opinion of this Court that Defendant's Special Plea in Bar should be denied in Law Number 65790. The Court further determines that Law Numbers 59782 and 65790, which were specially consolidated for the purpose of this hearing only, prospectively shall no longer be consolidated.

With this determination, the Court is concerned about the viability of Law Number 59782, the first lawsuit purportedly filed by Mrs. Eccleston. Cf. *Cook v. Radford Community Hosp.*, 260 Va. 443 (2000) (In the referenced case, the Supreme Court of Virginia found that a plaintiff in her individual capacity filed suit after having been adjudicated incapacitated and after appointment of a fiduciary. The Court then determined that the Code of Virginia (1950), as amended, § 37.1-141 (now § 37.2-1026) precludes the filing of an action by a person adjudged incapacitated and requires such action to be brought by the guardian of the incapacitated person. Further, the Court ruled that Cook was not entitled to amend her pleadings under either the misnomer or misjoinder statutes. Although the case presently before the Court easily can be distinguished from the cited case, in that Law Number 59782 was filed by Mrs. Eccleston in her individual capacity before she was adjudicated incapacitated, nonetheless, it is apparent to the Court that Mrs. Eccleston was incapacitated at the time the first suit was filed, and that causes concern. However, at this time, this Court makes no determination as to this issue.) Plaintiff cannot expect to have it both ways. A lawsuit cannot be filed

in Mrs. Eccleston's own name (while incapacitated and under a legal disability) and Plaintiff also have a second viable lawsuit in a substituted capacity.

February 1, 2008

This matter came before the Court on November 30, 2007, for hearing on the motion of Defendant, Patriot Harley Davidson, Inc., for summary judgment. For the reasons set forth below, the motion for summary judgment is denied.

## Background

This case arises out of a motorcycle accident involving Robert G. Eccleston and Catherine A. Eccleston on July 1, 2001, in New Jersey. On March 27, 2007, the Plaintiff filed an Amended Complaint seeking damages for injuries sustained by Mrs. Eccleston in the motorcycle accident. Named as Defendants were Harley-Davidson, Inc., Harley-Davidson Motor Company, and Harley-Davidson Motor Company Group, Inc. (collectively referred to herein as "Harley"); Patriot Harley Davidson, Inc. (referred to herein as "Patriot"); Goodyear Dunlop Tires North America, Ltd. (referred to herein as "Goodyear Dunlop"); and Kenda Rubber Industrial Company, Kenda Rubber Industrial Company, Ltd., and Kenda USA (collectively referred to herein as "Kenda").

The Complaint alleges the Defendants, including Patriot, were jointly and severally liable under theories of negligence and strict liability. Specifically, the Complaint alleges that the Plaintiff purchased a new 2000 Harley-Davidson Heritage Classic Softail motorcycle from Harley and Patriot. The Complaint alleges that Patriot performed all service and maintenance on the motorcycle from the time of purchase until the time of the accident. The Complaint further alleges that Patriot installed a new tire and new inner tube on the Plaintiff's motorcycle approximately one month before the accident. The Complaint alleges that the new tire was designed, manufactured, and sold by Goodyear Dunlop,[5] and the new inner tube was designed, manufactured and sold by Kenda.

---

[5] Goodyear Dunlop was removed from this action by nonsuit entered on February 8, 2005.

On November 21, 2007, Patriot filed a motion for summary judgment. Patriot asserted that it is entitled to relief from liability as a matter of New Jersey substantive law. In support of the motion, Patriot submitted an affidavit of its corporate representative, Kirk Heselbarth. In the affidavit, Mr. Heselbarth asserted that Patriot sold the inner tube that failed on July 1, 2001, but that Kenda was responsible for the design and manufacture of the inner tube. Mr. Heselbarth states that Kenda Industrial Rubber Co., Ltd., is a Taiwanese corporation and that American Kenda Industrial Rubber Co., Ltd., is a United States domestic subsidiary of the Taiwanese corporation. According to Mr. Heselbarth, Patriot did not exercise control over the design, manufacture, packaging, or labeling of the inner tube and Patriot had no reason to know of any alleged defect with the inner tube. Patriot also submitted an affidavit from Brian C. Wilberg. Mr. Wilberg's affidavit stated that, "to the best of my knowledge and belief" and based on his research of the dockets of United States Bankruptcy Courts, Kenda has not been adjudicated bankrupt.

Patriot claims that Mr. Heselbarth's affidavit meets the requirements of § 2A:58C-9 of the New Jersey Products Liability Act (hereinafter the "NJPLA"), N.J. Stat. Ann. 2A:58C-1 *et seq.* (West 1987), as amended by Act of June 29, 1995 (West Supp. 1997). According to Patriot, under the NPLA, the affidavit effectively eliminates the cause of action against Patriot as the product seller.

In its opposition to the motion for summary judgment, the Plaintiff asserts that the § 2A:58C-9 affidavit was procedural in nature and therefore has no application to this case. The Plaintiff further asserts that the affidavit is deficient on several grounds. Finally, the Plaintiff argues that, even if the affidavit is sufficient and applicable, summary judgment is inappropriate because there are still material facts in dispute.

### Standard of Review

Under Virginia law, summary judgment may only be granted when it appears to the court that there are no disputed issues of material fact. Va. Sup. Ct. R. 3:20 (2007). A motion for summary judgment, unlike a demurrer, allows the court "to evaluate and decide the merits of a claim." *See Fun v. Virginia Military Inst.*, 245 Va. 249, 252, 427 S.E.2d 181 (1993).

To be sure, summary judgment is disfavored in Virginia. A trial judge who grants summary judgment applies "a drastic remedy"; it is "unusual" for a trial court to grant summary judgment on the pleadings. *Slone v. General Motors Corp.*, 249 Va. 520, 457 S.E.2d 51 (1995); *Turner v. Lotts*, 244 Va.

554, 422 S.E.2d 765 (1992). It "is applicable only to those cases where no trial is necessary because no amount of evidence could affect the result." *General Accident, Fire & Life Assurance Corp. v. Cohen*, 203 Va. 810, 814, 127 S.E.2d 399 (1962). Further, the court must adopt those inferences from the facts that are most favorable to the nonmoving party, unless the inferences are strained, forced, or contrary to reason. *Carson, ex rel. Meredith v. LeBlanc*, 245 Va. 135, 427 S.E.2d 189 (1993); *Bloodworth v. Ellis*, 221 Va. 18, 267 S.E.2d 96 (1980).

## Analysis

### A. *Choice of Law*

Patriot asserts that it may be relieved of liability for an allegedly defective product by filing a § 2A:58C-9 affidavit that correctly identifies the manufacturer. N.J. Stat. Ann. § 2A:58C-9(b) ("Upon filing the affidavit . . . the product seller shall be relieved of all strict liability claims."); *Claypotch v. Heller, Inc.*, 823 A.2d 844, 851, 360 N.J. Super. 472, 485 (N.J. Super. App. Div. 2003) (noting the purpose of the statute is "to reduce litigation costs borne by innocent retailers in product liability actions"). The first issue is whether the statutory provision of § 2A:58C-9 is procedural or substantive.

In resolving conflicts of laws, the settled rule in Virginia is that the substantive rights of the parties in a multi-state tort action are governed by the law of the place of the wrong, while matters of procedure are governed by the law of the forum. *Jones v. R. S. Jones & Assocs.*, 246 Va. 3, 5 (1993); *McMillan v. McMillan*, 219 Va. 1127, 1128, 253 S.E.2d 662, 663 (1979); *Maryland v. Coard*, 175 Va. 571, 580-81, 9 S.E.2d 454, 458 (1940). In other words, in this case, we apply the substantive law of New Jersey, the place of the wrong, and the procedural law of Virginia. *Jones v. R. S. Jones & Assocs.*, 246 Va. 3, 5 (1993). This Court previously ruled on March 5, 2007, that, under Virginia's choice of law rules, the substantive law of New Jersey applies in this case.

The parties were not able to point to, and the court was unable to locate, any decision in Virginia or New Jersey case law as to whether New Jersey's affidavit provision is substantive or procedural. In *Torres v. Lucca's Bakery*, 487 F. Supp. 2d 507, 514 (D. N.J. 2007), a federal court conducted a choice of law analysis in determining whether to apply New Jersey or Pennsylvania products liability law, but the court's analysis is not helpful because it used the "the governmental-interest analysis" and only discussed the New Jersey statute generally. The same is true of *Petrokehagias v. Sky Climber, Inc.*, 1998 U.S.

Dist. LEXIS 6746 (D. Pa. 1998), which compared New Jersey, Pennsylvania, and Massachusetts product liability law. In fact, there are very few reported decisions interpreting § 2A:58C-9 and, "although a number of other states have enacted statutes that provide a similar defense to a seller that was not responsible for an alleged products defect . . . [no other state has] a statute containing language comparable to N.J.S.A. 2A:58C-9." *Claypotch v. Heller, Inc.*, 823 A.2d 844, 851, 360 N.J. Super. 472, 484 (App. Div. 2003).

Thus, this Court must determine "according to [Virginia's] conflict of laws rules whether a question of law is substantive or procedural." *Willard v. Aetna Casualty & Surety Co.*, 213 Va. 481, 483, 193 S.E.2d 776, 778 (1973); *Clark v. Clark*, 11 Va. App. 286, 398 S.E.2d 82, 89 (Va. App. 1990). In making this determination, the Court is mindful that the purpose of the conflict of laws doctrine is "to prevent substantial variation as a result of choice of forum in the rights and duties arising from a given legal situation." *Collins v. American Auto. Ins. Co.*, 230 F.2d 416, 421-22 (2d Cir. 1956) (cited with approval by *Willard*, 213 Va. at 483).

In Virginia, a substantive provision is one that "goes to the very right of the action." *Willard v. Aetna Casualty & Surety Co.*, 213 Va. 481 (1973); *Maryland v. Coard*, 175 Va. 571, 580-81, 9 S.E.2d 454, 458 (1940); *see also Guaranty Trust Co. v. York*, 326 U.S. 99, 109 (1945) (explaining that a statute is substantive if it would significantly affect the result of litigation to disregard the statute). By contrast, a procedural provision is one that "addresses not the viability of the claim itself, but its enforceability." *Taylor v. Taylor*, 14 Va. App. 642, 648, 418 S.E.2d 900 (1992); *see also Maryland v. Coard*, 175 Va. 571, 580-81, 9 S.E.2d 454, 458 (1940) (holding that the law of the forum "controls all that is connected merely with the remedy"). *Guaranty Trust*, 326 U.S. at 109 (explaining that a statute is procedural if it concerns "merely the manner and the means by which a right to recover . . . is enforced"); *Collins v. American Auto. Ins. Co.*, 230 F.2d 416, 421-22 (2d Cir. 1956) (explaining procedural provisions are those which "promote practicality, convenience, and the integrity of local practice"). To understand this distinction, it is useful to draw analogy to similar cases.

For example, in *Willard v. Aetna Casualty & Surety Co.*, 213 Va. 481 (1973), Mr. Willard sued his North Carolinian automobile liability insurance carrier for damages sustained in an automobile accident in Virginia. *Id.* at 481. Mr. Willard claimed that he could directly sue the insurance carrier under a North Carolina statute. *Id.* at 482. However, the insurance company argued Virginia law required Mr. Willard to follow a different procedure; first, obtain judgment in tort against the unknown driver and second, bring suit against the insurance company. *Id.* The Supreme Court of Virginia reversed the trial

court's decision to apply Virginia law and held that the North Carolina statute was substantive, not procedural. *Id.* at 483. The court explained, "In our view, the direct action provision is an integral part of the statute. It goes to the very right of the action, and we hold that it is a matter of substantive law." *Id.*

In *Hinds v. CompAir Kellogg*, 776 F. Supp. 1102 (E.D. Va. 1991), a widow sued the manufacturer of an allegedly defective air compressor for a fatal industrial accident in Indiana. The case was removed to the United States District Court for the Eastern District of Virginia. The parties jointly stipulated to application of Virginia choice of law rules. *Id.* at 1104. At issue was the applicability of the statute of repose in Indiana's Product Liability Act. The statute barred lawsuits brought more than ten years after delivery of the product to the user. *Id.* The district court held, "it cannot seriously be disputed that Indiana's statute of repose is applicable to this case." *Id.* at 1105-06. The provision was substantive because it barred a right of action, regardless of the time of injury, based on a legislative policy to limit the liability of manufacturers. *Id.* citing *School Bd. v. United States Gypsum Co.*, 234 Va. 32, 37 (1987) ("[S]tatutes of repose reflect legislative decisions that, as a matter of policy, there should be a specific time beyond which a defendant should no longer be subjected to protracted liability. Thus a statute of repose is intended as a substantive definition of rights as distinguished from a procedural limitation [such as a statute of limitations] on the remedy used to enforce rights."); *Knox v. AC & S, Inc.*, 690 F. Supp. 752, 759 (D. Ind. 1988) ("The statute of repose is a policy statement of the Indiana Legislature, designed with the chief purpose of limiting a manufacturer's liability and its risk of loss for placing a product into the stream of commerce in Indiana.").

This Court considers the New Jersey affidavit provision to be substantive because it goes to the basis of the right of action itself. As in *Willard*, the provision sets forth a procedure which is integral to the statute. Just as Mr. Willard was able to use the North Carolina procedure to skip a lawsuit against the unknown driver and proceed with a direct action against the insurance company, the New Jersey statute streamlines the plaintiff's case by allowing innocent sellers to use the affidavit procedure to step out of the litigation. Further, as in *Hinds*, the New Jersey affidavit provision is a liability limiting provision within the broader New Jersey Products Liability Statute. The affidavit provision does not merely limit the remedy used to enforce a products liability claim, but actually addresses the viability of the claim itself. As with Indiana's statute of repose, the affidavit provision reflects a legislative policy decision to limit the liability of sellers who can show the defect originated with the manufacturer.

In conclusion, this Court finds that § 2A:58C-9 is a substantive provision which applies in this case. Therefore, we proceed to analyze the sufficiency of Patriot's claim that its affidavit succeeds in relieving it of Plaintiff's strict liability claim.

## B. *Sufficiency of Affidavit to Relieve Patriot of Liability*

Under the NJPLA, and subject to certain exceptions, a seller of an allegedly defective product may be relieved of all strict liability claims by filing an affidavit correctly identifying the manufacturer of the product. N.J. Stat. Ann. § 2A:58C-9. The statute provides in pertinent part:

> a. In any product liability action against a product seller, the product seller may file an affidavit certifying the correct identity of the manufacturer of the product which allegedly caused the injury, death, or damage.
>
> b. Upon filing the affidavit pursuant to subsection a. of this section, the product seller shall be relieved of all strict liability claims, subject to the provisions set forth in subsection d. of this section. Due diligence shall be exercised in providing the plaintiff with the correct identity of the manufacturer or manufacturers.
>
> c. The product seller shall be subject to strict liability if:
>
> (1) The identity of the manufacturer given to the plaintiff by the product seller was incorrect. Once the correct identity of the manufacturer has been provided, the product seller shall again be relieved of all strict liability claims, subject to subsection d. of this section; or
>
> (2) The manufacturer has no known agents, facility, or other presence within the United States; or
>
> (3) The manufacturer has no attachable assets or has been adjudicated bankrupt and a judgment is not otherwise recoverable from the assets of the bankruptcy estate.
>
> d. A product seller shall be liable if:
>
> (1) The product seller has exercised some significant control over the design, manufacture, packaging, or labeling of the product relative to the alleged defect in the product which caused the injury, death, or damage; or
>
> (2) The product seller knew or should have known of the defect in the product which caused the injury, death, or damage or the plaintiff can affirmatively demonstrate that the

product seller was in possession of facts from which a reasonable person would conclude that the product seller had or should have had knowledge of the alleged defect in the product which caused the injury, death, or damage; or

(3) The product seller created the defect in the product which caused the injury, death, or damage.

N.J. Stat. Ann. § 2A:58C-9. The statute requires a four-part analysis.

First, Patriot must establish that it is a product seller as defined in § 2A:58C-8. The Act defines the term "product seller" in § 2A:58C-8 to mean:

any person who, in the course of a business conducted for that purpose: sells; distributes; leases; installs; prepares; or assembles a manufacturer's product according to the manufacturer's plan, intention, design, specifications, or formulations; blends; packages; labels; markets; repairs; maintains; or otherwise is involved in placing a product in the line of commerce.

N.J. Stat. Ann. § 2A:58C-8.

Second, Patriot must file an affidavit "certifying the correct identity of the manufacturer of the product which allegedly caused the injury, death, or damage." N.J. Stat. Ann. § 2A:58C-9(a). For the affidavit to be accepted, (1) the seller must exercise due diligence to provide the affidavit and (2) the affidavit must be based on personal knowledge. N.J. Stat. Ann. § 2A:58C-9(a)-(b); *Claypotch v. Heller, Inc.*, 360 N.J. Super. 472, 485-89 (App. Div. 2003).

Third, Patriot must show that it does not remain subject to liability under any of several exceptions. A "product seller" may be liable if (1) the identity given to the claimant of the manufacturer is incorrect; (2) the manufacturer has no known agents, facility, or presence in the United States; or (3) the manufacturer has no attachable assets to satisfy a judgment. N.J. Stat. Ann. § 2A:58C-9(c)(1)-(3).

Fourth, the statute additionally provides that a "product seller" shall be liable under § 2A:58C-9(d) if:

(1) The product seller has exercised some significant control over the design, manufacture, packaging, or labeling of the product relative to the alleged defect in the product which caused the injury, death, or damage; or

(2) The product seller knew or should have known of the defect in the product which caused the injury, death, or damage or the plaintiff can affirmatively demonstrate that the product seller was in possession of facts from which a reasonable person would conclude that the product seller had or should have had knowledge of the alleged defect in the product which caused the injury, death, or damage; or

(3) The product seller created the defect in the product which caused the injury, death, or damage.

N.J. Stat. Ann. § 2A:58C-9(b), (d).

In this case, Patriot fails to meet the requirements under § 2A:58C-9. For the sake of argument, this Court will assume that Patriot is a product seller within the definition of § 2A:58C-8. Contrary to plaintiff's contentions, the definition of "product seller" does not require that the "product seller" sell a product "according to the manufacturer's plan, intention, design, specifications, or formulations." The definitions in § 2A:58C-8 are each separated by semi-colons, which indicates that each definition should be read as having a separate and distinct meaning. The phrase relied upon by plaintiff modifies "prepares or assembles." It does not apply to either the term "sells" or the phrase "otherwise is involved in placing a product in the line of commerce." Thus, it appears that Patriot would be considered a "product seller" under § 2A:58C-8.

However, under the second prong of the analysis, Patriot's affidavit is insufficient on its face. It appears that Patriot's failure to submit the affidavit until after discovery closed could be considered a violation of the due diligence requirement. *See Claypotch*, 360 N.J. Super. at 486-87 (warning that failure to file affidavit within prescribed discovery period may result in dismissal based on failure to comply with due diligence requirement). More importantly, Patriot's affidavit does not state that it is based on personal knowledge. *Id.* at 488 (holding that, if a party relies upon such an affidavit to attain summary judgment, the affidavit must be "made on personal knowledge, setting forth only facts which are admissible in evidence to which the affiant is competent to testify).

Additionally, under the third prong of the analysis, Patriot fails to establish that the manufacturer, Kenda, was solvent. The affidavit of Brian Wilberg only certifies that his statements about Kenda's solvency are true "to the best of my knowledge and belief." Because this affidavit is not based on personal knowledge, it is insufficient under New Jersey law. *Id.* (rejecting

seller's assertion that the manufacturer was solvent because the affidavit was "based merely on information and belief" rather than on "personal knowledge").

Finally, even if the affidavit was sufficient, under the fourth prong of the analysis, there remain material facts in dispute on each of the issues listed in § 2A:58C-9(d). For example, Plaintiff's Complaint alleges that "Patriot changed the rear tire of Mr. Eccleston's motorcycle and installed a new tire and related parts. . . ." Plaintiff's Complaint ¶ 11. Whether Patriot's service on the motorcycle constituted "significant control" over the packaging or labeling of the allegedly defective product is a question of fact which is best decided by the jury. N.J. Stat. Ann. § 2A:58C-9(d)(1). Also, Plaintiff has alleged that Patriot sold goods which were unreasonably dangerous and that Patriot knew or should have known to warn of such danger. Plaintiff's Complaint ¶¶ 11, 21. Whether Patriot knew or should have known of the alleged defect is a question of fact for the jury. N.J. Stat. Ann. § 2A:58C-9(d)(2). Finally, there remains a dispute as to whether Patriot created the alleged defect in the product. N.J. Stat. Ann. § 2A:58C-9(d)(3). Plaintiff has alleged that Patriot installed the inner tube improperly and negligently. Plaintiff's Complaint ¶ 11. Further, Kenda alleges that Patriot's negligence was the cause of the accident. Kenda's Answer, Defense 9.

As is apparent, Patriot's affidavit fails to establish that it is "truly innocent of responsibility for the alleged defective product." *Claypotch*, 360 N.J. Super. at 485. The affidavit fails to meet the requirements under § 2A:58C-9. Further, there are significant material facts in dispute as to Patriot's liability for the harm suffered by the Ecclestons in the motorcycle accident. Therefore, summary judgment is inappropriate in this case.

## Conclusion

In conclusion, this Court finds that § 2A:58C-9 is a substantive provision that "goes to the very right of the action." Therefore, consideration of Patriot's affidavit is properly before this court. However, because Patriot's affidavit fails to meet the requirements of § 2A:58C-9 and because material facts remain in dispute, this Court holds that summary judgment is not proper. For these reasons, Patriot's motion for summary judgment is denied.