James **RICHARDSON**, Plaintiff–Appellant,

v.

**GALLO EQUIPMENT COMPANY,**
Defendant–Appellee.

No. 92–2985.

United States Court of Appeals,
Seventh Circuit.

Argued March 3, 1993.

Decided April 5, 1993.

Roger A. Weitgenant, Thomas F. Macke, Blachly, Tabor, Bozik & Hartman, Valparaiso, IN, (argued), for plaintiff-appellant.

Kathryn D. Schmidt, Burke, Murphy, Costanza & Cuppy, Merrillville, IN, David Cerven, Burke, Murphy, Costanza & Cuppy, East Chicago, IN, (argued), for defendant-appellee.

Before POSNER and EASTERBROOK, Circuit Judges, and PELL, Senior Circuit Judge.

POSNER, Circuit Judge.

James Richardson was employed by LTV Steel Company in one of its steel plants. The plant was noisy, and Richardson did not hear the backup alarm on a forklift operated by a fellow worker. The forklift backed over Richardson, injuring him seriously. He brought this products liability suit against Gallo Equipment Company, the company that had leased the forklift to LTV. Gallo removed the suit to federal district court, which, applying the law of Indiana to the substantive issues, granted summary judgment for Gallo and dismissed the suit. The judge thought the suit barred by Indiana's statute of repose, which provides that a products liability suit must be brought "within ten (10) years after the delivery of the product to the initial user or customer." Ind.Code § 33–1–1.5–5(b). The forklift had been manufactured by Taylor Machine Works and sold by it to Gallo in 1973. At the time of its original sale it was not equipped with a back-up alarm or warning light. Gallo added these items to the forklift in 1985, shortly before leasing it to LTV. The accident occurred in 1988—more than ten years after the delivery of the forklift to its first customer, Gallo, but fewer than ten years after Gallo delivered the improved forklift to LTV.

We take two points to be clear, though authority is sparse. The first is that any reconstruction or reconditioning (as distinct from a mere repair—a familiar distinction in other areas of law, see, e.g., *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 81 S.Ct. 599, 5 L.Ed.2d 592 (1961)) which has the effect of lengthening the useful life of a product beyond what was contemplated when the product was first sold starts the statute of repose running anew. *Denu v. Western Gear Corp.*, 581 F.Supp. 7 (S.D.Ind.1983) (applying Indiana law); *Rollins v. Cherokee Warehouses, Inc.*, 635 F.Supp. 136 (E.D.Tenn.1986); *Fugate v. AAA Machinery & Equipment Co.*, 593 F.Supp. 392 (E.D.Tenn.1984). Otherwise the statute would create an inefficient incentive to reconstruct or recondition old products rather than build new ones, in order to reduce expected liability costs; for under such a regime a product rebuilt after ten years would be immunized from liability. The second point is that merely by incorporating a defective component into an old product the incorporator cannot obtain the protection from suit that the statute of repose gave the old product. *Black v. Henry Pratt Co.*, 778 F.2d 1278, 1282–83 (7th Cir. 1985) (applying Indiana law); *Hinds v. CompAir Kellogg*, 776 F.Supp. 1102, 1107–08 (E.D.Va.1991), aff'd without opinion, 961 F.2d 211 (4th Cir.1992) (ditto). Here, for example, Gallo made the improvements to the Taylor forklift more than ten years after its original sale. Gallo could not by this fortuity obtain immunity from products liability should its components prove defective and as a result cause an injury to someone.

There is no suggestion that the warning devices extended the useful life of the forklift. We may assume without having to decide that a product need not be about to

wear out physically in order to require (and acquire) a new lease on life. Suppose a law had been passed requiring all forklifts to be equipped with warning devices. Then the Taylor forklift would be doomed without the improvements made by Gallo, and there would be an argument that Gallo had extended the forklift's useful life, thereby restarting the statute of repose. Nothing of that sort is involved here, leaving Richardson to argue that Gallo installed a defective component, namely the back-up alarm, which caused the injury. If the back-up alarm was defective and caused the injury, then, as we have said, Gallo cannot shelter behind the statute of repose that would protect both it and Taylor from a suit based on an alleged defect in the original, unimproved forklift. *Black v. Henry Pratt Co., supra,* 778 F.2d at 1282–83.

■ The district judge determined that the back-up alarm had not been defective. This might seem a ruling on the merits rather than on the statute of repose, but in the case of a component the two issues are intertwined. Unless the component is defective and caused the injury, the suit is barred by the statute of repose because then the defect must have been in the original product; and, to repeat an essential point in this opinion, merely adding a component, without extending the life of the original product (not here alleged), does not affect the statute of repose.

■ Gallo argues that we can affirm even if the alarm was defective. Because the improvements that it made to the forklift did not make the forklift more dangerous, they could not be a cause of Richardson's accident, even if they were defective. One can readily imagine a case in which this would not be true, in which the improvements would if defective make the forklift more dangerous than if they had never been added. Suppose the alarm didn't work at all. Then it could have made the forklift more dangerous by lulling LTV and its workers into the perilous false belief that they didn't have to take any other precautions against being backed over by the forklift, because it had a back-up alarm. Cf. *Trevino v. Union Pacific R.R.,* 916 F.2d 1230, 1237 (7th Cir.1990); *Erie R. Co. v. Stewart,* 40 F.2d 855 (6th Cir.1930). Richardson, however, does not advance a "lulling" theory of liability. Moreover, an uncontradicted affidavit submitted by Gallo establishes that the alarm was in good working order at the time of the accident, and this by itself knocks out Richardson's suit, for we do not understand him to be contending that the alarm failed to conform to industry custom or was poorly designed. There is, for example, no information in the record about the decibel level of the alarm; but it is not claimed to be too low. All that is claimed is that Richardson did not hear the alarm because there was a lot of noise on the factory floor. A safety precaution is not defective merely because it fails to prevent an accident. If a person is killed in a head-on collision in which the vehicles crashed at a combined speed of 200 miles per hour we do not without more infer that his vehicle's safety devices were defective. Gallo was not responsible for the noise in LTV's steel plant and an alarm is not defective merely because it is not loud enough to be heard whatever the ambient noise level—so loud an alarm might endanger the workers' hearing, in violation of OSHA regulations. See 29 C.F.R. § 1910.95(a); *Hearing Conservation Amendment,* 47 Fed.Reg. 1791 (Jan. 13, 1982). Richardson points to evidence that Gallo was familiar with LTV's plant, and reminds us that a manufacturer's duty under Indiana law is "to anticipate what the environment will be like in which the product is to be used and what the foreseeable risks of such use are." *Phelps v. Sherwood Medical Industries,* 836 F.2d 296, 305 (7th Cir.1986). But it is too big a leap to the conclusion that Gallo must have known that the alarm it installed on the forklift was too soft; for there is no evidence of the ambient noise level when Richardson was injured. And, for all that appears, the alarm *was* audible, and Richardson didn't hear it only because he was distracted.

AFFIRMED.