Alex **BUTCHKOSKY**, and **All Air, Inc.,** a Florida corporation, Plaintiffs,

v.

**ENSTROM HELICOPTER CORPORA- TION, a Delaware corporation, and Wil- liam R. Ciszewski, Defendants.**

No. 91–10007–CIV.

United States District Court, S.D. Florida.

Dec. 8, 1993.

Marc David Sarnoff, Sarnoff & Bayer, Coconut Grove, FL, for plaintiffs.

Arthur C. Moller, III, Law Offices of Arthur C. Moller, P.A., Miami, FL, Fred C. Begy III, Adler Kaplan & Begy, Chicago, IL, for defendant Enstrom Helicopter Corp.

James W. Jarvis, Miami, FL.

### ORDER GRANTING DEFENDANT ENSTROM HELICOPTER CORPORATION'S MOTION FOR SUMMARY JUDGMENT

JAMES LAWRENCE KING, District Judge.

THIS CAUSE comes before the Court on Defendant Enstrom Helicopter Corporation's Motion for Summary Judgment, filed on October 1, 1993. (D.E. # 107). In its Motion, Enstrom argues that Plaintiffs' claims are barred by Florida's twelve-year statute of repose for products liability claims. Fla.Stat. § 95.031(2) (repealed effective July 9, 1986). At a hearing held on March 24, 1993, this Court addressed a previous summary judgment motion on the same statute of repose issue. The Court denied that motion without prejudice to Defendant's right to reassert the motion after Plaintiffs had had an opportunity to conduct discovery on the issue. More than six months passed before Defendant reasserted the instant Motion for Summary Judgment.

After Defendant on October 1 re-filed its Motion for Summary Judgment, Plaintiffs failed to respond until the time period mandated by the Federal Rules of Civil Procedure had lapsed. Nevertheless, Defendant agreed to allow them until November 7 to file a response. Plaintiffs then filed an Motion for Extension of Time requesting until November 15 to file a response to the Motion for Summary Judgment. Over Defendant's objections, the Court granted Plaintiffs until November 15 to respond to the Motion. On November 15, Plaintiffs filed an affidavit of Plaintiff Alex Butchkosky in opposition to Enstrom's Motion for Summary Judgment. It was not until November 17 that Plaintiffs filed their Memorandum in Opposition to Motion for Summary Judgment on Statute of Repose. Nevertheless, the Court has considered both Butchkosky's Affidavit and Plaintiffs' Memorandum in Opposition.

On November 30, Enstrom filed a Motion to Strike the Affidavit of Alex Butchkosky Filed in Opposition to Enstrom's Motion for Summary Judgment, which Motion argued that the Affidavit is inadmissible hearsay. Enstrom also filed a Reply Memorandum in

Support of its Motion for Summary Judgment.

The Court need not resolve whether the Affidavit constitutes inadmissible hearsay because even if the Affidavit is credited for the truth of the matter asserted therein, Enstrom's Motion for Summary Judgment should be granted.

### I. Standard for Summary Judgment

Summary judgment is generally appropriate only if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "The party seeking summary judgment bears the exacting burden of demonstrating that there is no dispute as to any material fact in the case." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir.1983) (citations omitted). "In assessing whether the movant has met this burden, the courts should view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion." *Clemons v. Dougherty County*, 684 F.2d 1365, 1368 (11th Cir.1982) (citation omitted). Although it is incumbent upon the responding party to "set forth specific facts showing that there is a genuine issue for trial," Fed.R.Civ.P. 56(e), "[t]he burden on the nonmoving party is not a heavy one; he simply is required to show specific facts, as opposed to general allegations, that present a genuine issue worthy of trial." 10A Charles A. Wright, et al., *Federal Practice and Procedure* § 2727 (1983) (citing *First Nat'l Bank of Az. v. Cities Serv. Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968)). A material fact for purposes of a motion for summary judgment is one which is determinative of the parties' duties or rights. *Valadez v. Graham*, 474 F.Supp. 149, 154 (M.D.Fla.1979) (citing *Atkinson v. Jory*, 292 F.2d 169, 171 (10th Cir. 1961)).

The jurisdiction of this Court is based on diversity, and the substantive law to be applied is that of the State of Florida. There are no published Florida state court decisions addressing whether an overhaul and/or repair of a component part of a multi-component product can toll the statute of repose so as to allow a claim that would otherwise be barred as untimely. In the absence of interpretive guidance from the state courts of Florida, this Court must determine, as best it can, how it thinks the Florida Supreme Court would interpret the statute if presented with this issue.

### II. Statement of Facts

As pointed out above, this Court must, in the summary judgment context, construe all evidence in the light most favorable to Plaintiffs as the non-moving party. Accordingly, the Court considers as true the facts set forth below.

On May 13, 1990, an Enstrom Helicopter, model F–28A, registered as N9056, crashed in the ocean adjacent to Marathon Airport, Marathon, Florida while on a sightseeing flight. Visual meteorological conditions prevailed at the time of the crash, and no flight plan had been filed. The aircraft was registered to Plaintiff All Air Corporation and was being piloted by Plaintiff Alex Butchkosky.

The pilot subsequently recounted that shortly after take-off, at an altitude of approximately fifty feet in the air, he heard a loud noise and lost tail rotor drive and control. He then executed a power-on landing into the ocean in shallow water. The tail rotor gear box had failed at the casting around the input drive gear, and there was evidence of gear tooth "logjamming" on the casting interior. The drive gear was not recovered from the ocean.

On February 29, 1980, the subject tail rotor gear box of the subject helicopter had been repaired or overhauled and/or inspected by Hanger one, Inc. ("Hanger One"), in accordance with Enstrom manuals. Hanger One was an authorized inspection and/or repair facility for Enstrom. Enstrom was aware that tail rotor gear boxes were being inspected by its authorized repair facilities (including Hangar One) during the 1980 time-frame in question, and the company did not object to this practice.

There is conflicting evidence in the record as to whether the tail rotor gear box of helicopter N9056 was repaired and/or overhauled by Hangar One on February 29, 1980.

Defendants have submitted an unsworn letter from Hangar One identifying the tail rotor gear boxes it overhauled, which letter does not include the tail rotor gear box of N9056. Plaintiffs have submitted as an exhibit to the sworn affidavit of Plaintiff Butchkosky a photocopy of the log book kept on board N9056, which log includes an entry indicating the tail rotor gear box of N9056 was inspected by Hangar One on February 29, 1980. The log may also indicate that the part was overhauled, although that portion of the log is partially obscured in the photocopy and Butchkosky's affidavit does not assert the part was overhauled. In any event, the Court will consider as true Plaintiffs' assertion that the tail rotor gear box was overhauled and inspected by Hangar One.[1]

Prior to the crash but after the repair was allegedly made, the Federal Aviation Administration ("FAA") issued Airworthiness Directives AD83–18–041 Amendment 3904721, and AD90–01–06, both of which call for certain inspection and precautionary measures to be taken relative to parts of the tail rotor of Enstrom F–28A helicopters. Plaintiffs also contend that Enstrom had knowledge of six failures of the tail rotors of Enstrom F–28A helicopters; that Enstrom authored two service directive bulletins ("SDBs") to combat tail rotor failures; and that Enstrom participated in three airworthiness directives ("ADs") concerning tail rotor failures, one on coupling failure due to excessive hardness and two on Boston gear failures. Again, these SDBs and ADs were authored prior to the crash of N9056 but after the repair was allegedly performed on the helicopter.

### III. Motion for Summary Judgment

■ Defendant Enstrom has moved for summary judgment based on Florida's twelve-year statute of repose for products liability claims. Fla.Stat. § 95.031(2) (repealed effective July 9, 1986). In the wake of the decision of the Florida Supreme Court in *Firestone Tire & Rubber Co. v. Acosta*, 612 So.2d 1361 (Fla.1992), it is apparent that

a plaintiff is precluded from bringing a products liability action where the allegedly faulty product had turned twelve years old *before* the statute of repose had been repealed but the plaintiff's injuries occurred *after* the statute of repose had been repealed. Such is the case in the instant action.

Plaintiffs argue that even though the crash occurred more than twelve years after the initial sale of the aircraft, the statute of repose was tolled by Hangar One's overhaul and/or repair of the tail rotor gear box that allegedly caused the crash. Defendants counter that even if the tail rotor gear box of N9056 was, in fact, overhauled and/or repaired by Hangar One, and even if Hangar One, in performing such services was acting on behalf of Enstrom, this would not toll the statute of repose.

### A. Would the statute of repose be tolled by a complete overhaul and inspection of the tail rotor gear box by Enstrom's agent?

■ Even if Hangar One is deemed an agent of Enstrom, and even if Hangar One performed a complete overhaul and inspection of the tail rotor gear box in accordance with Enstrom manuals, this would not toll the statute of repose. The overhaul of the helicopter's tail rotor gear box would not render the helicopter a new product so that the helicopter's manufacturer would be liable for a design flaw. The cases cited by Plaintiffs for the contrary proposition all involve situations where the products at issue had been re-acquired by the manufacturer and had been completely refurbished prior to being re-sold to new customers. *See Denu v. Western Gear Corp.*, 581 F.Supp. 7 (S.D.Ind. 1983); *Fugate v. AAA Machinery & Equip. Co.*, 593 F.Supp. 392 (E.D.Tenn.1984); *Rollins v. Cherokee Warehouses, Inc.*, 635 F.Supp. 136, 137 (E.D.Tenn.1986). The repairs to the products in these cited cases were intended to lengthen the useful life of the products beyond what was contemplated

---

1. As pointed out above, the Court need not decide whether Butchkosky's Affidavit and the aircraft logbook, which comprise the only evidence in the record that this repair or overhaul was performed, constitute inadmissible hearsay.

Even if the Affidavit and its exhibit are accepted for the truth of the matter asserted therein, Enstrom's Motion for Summary Judgment must be granted.

when the products were first sold, *see Richardson v. Gallo Equipment Co.,* 990 F.2d 330, 331 (7th Cir.1993), and the products in these three cases were re-introduced into the stream of commerce by the manufacturer. Such is not the case in the action at hand. *See Hinds v. CompAir Kellogg,* 776 F.Supp. 1102, 1107 (E.D.Va.1991) ("[I]n the cases [*Denu* and *Fugate* ] cited by the plaintiff, the machinery at issue was reacquired by the manufacturer, completely reconditioned, and then resold to new customers. None of this happened here. Neither *Denu* nor *Fugate* stand for the proposition that delivery of replacement parts by a manufacturer, years after the sale of the original product and years after the transfer of title, custody, and control, transforms the original machine into a 'new' product"), *aff'd without op.,* 961 F.2d 211 (4th Cir.1992). There is a great deal more to a helicopter than the tail rotor gear box. The F–28A in question contained a plethora of critical parts, including main rotor blades, governors, avionics, and fuel cells. *Cf. id.* at 1106–07 ("Besides the air end and oil/air separator, the compressor contains an air filter system, an air inlet control system, an electric motor, piping, oil filtering devices, ...."). Even though the tail rotor gear box is critical to the safe functioning of the aircraft, its replacement is insufficient to qualify the helicopter as a new product that would re-start the statute of repose. This is especially so where the manufacturer did not take possession of, and title to, the helicopter and re-sell it into the stream of commerce.

A holding that would toll the statute of repose on a product on account of an overhaul of a critical component of that product would effectively eviscerate the statute of repose as it applied to many types of products. For example, aircraft are required by statute to be routinely overhauled, and certain critical parts must be repaired or replaced on a regular basis. If every time a critical component was overhauled, or even replaced, the statute of repose began anew thus permitting an individual to sue for a design flaw, then the manufacturer of the aircraft would never be afforded the protection of the statute of repose.

The statute of repose precludes a manufacturer's liability for a *design* flaw in the original product, but the repair of the critical part provides an injured party with a cause of action against the party who performed the *repair* or who designed the replacement part if that part is different in design from the original. The repairing party might be the manufacturer or a third party. If it is the manufacturer, the suit must be based on the unsafe repair or on the design of the re-designed replacement component—not on a design flaw in the manufacturing process of the original multi-component product or the original component that was replaced.

In the instant case, Plaintiffs can maintain the suit against Enstrom in its capacity as the repairer of the component (if it is shown to be Hangar One's principal) based on a *faulty overhaul* of the tail rotor gear box, but not in its capacity as a manufacturer of the aircraft on a *flaw in the design* of the original component part of the aircraft. *Cf. Richardson,* 990 F.2d at 331 ("[M]erely by incorporating a defective component into an old product *the incorporator* cannot obtain the protection from suit that the statute of repose gave the old product") (citing *Black v. Henry Pratt Co.,* 778 F.2d 1278, 1282–83 (7th Cir.1985); and *Hinds,* 776 F.Supp. at 1107–08) (emphasis added). If the part were repaired to original specifications, then the statute of repose would preclude a suit for the failure of the part caused by a flaw in its design. After all, the problem with the helicopter in, say, year 9 when the part was repaired or year 15 when the part failed, was the same problem that existed in year 1: the design flaw in the component part, the tail rotor gear box. There is no allegation that the mechanical repair or overhaul performed by Hangar One was intended in any way to alter the design of the helicopter's tail rotor gear box. The Florida statute of repose was passed to protect a manufacturer, after the passage of a certain period of time, from suits alleging design flaws in the original product. A non-negligent overhaul of the part to original specifications does not alter the design flaw which continued uninterrupted from year 1 through to year 15; such an

overhaul therefore cannot properly be viewed as tolling the statute of repose.

Plaintiffs place great emphasis on the helicopter's history of tail rotor gear box failures, and on the numerous SDBs and ADs directed at this component. Had the FAA mandated, *prior to* the repairs which allegedly took place in 1980, that all Enstrom F–28A helicopters must undergo a certain mechanical procedure, then the subsequent procedure might be seen as extending the useful life of the helicopter since it would be useless without the procedure. In a case legally similar to the one at hand, the Seventh Circuit recently recognized the possibility a statute of repose would be tolled in such an instance:

> Suppose a law had been passed requiring all forklifts to be equipped with warning devices. Then the Taylor forklift would be doomed without the improvements made by Gallo, and there would be an argument that Gallo had extended the forklift's useful life, thereby restarting the statute of repose. Nothing of that sort is involved here, leaving Richardson to argue that Gallo installed a defective component, namely the back-up alarm, which caused the injury. If the back-up alarm was defective and caused the injury, then, as we have said, Gallo cannot shelter behind the statute of repose that would protect both it and Taylor from a suit based on an alleged defect in the original, unimproved forklift.

*Richardson,* 990 F.2d at 332. Even under the law as enunciated in *Richardson,* a tolling of the statute of repose in such circumstances is only a plausible argument that could be made, for although the mandated repair would lengthen the useful life of the product, it would not be lengthening it beyond what had been contemplated when the product was first sold. *See id.* at 331. In any event, such a mandate was present in neither the *Richardson* case, nor the one at hand. First, the SDBs and ADs were issued *after* the alleged overhaul at issue. Second, as noted above, there is no evidence that the overhaul altered in any way the design of the original component part. In *Richardson,* the installation of the allegedly defective component that caused the injury would not open the manufacturer of the multi-component product to liability for a design flaw in the original, unimproved product—even if the flaw in question was the failure to include the improvement or alteration in the original design. As applied to the instant case, as has already been stated above, Plaintiffs could maintain a suit against Enstrom as the repairer of the component if the repair were performed negligently (or as the designer of a replacement component if that component somehow added to or improved the helicopter, which is not alleged by Plaintiffs), but they cannot maintain a suit against Enstrom as the manufacturer of the helicopter based on an alleged defect in the design of the helicopter, including the original component part.

It is also worth noting that a different rule could place perverse incentives on a manufacturer not to repair potentially flawed parts for fear of re-starting the statute of repose and thus extending the period of its liability.

### B. *Enstrom's Liability for Hangar One's Overhaul*

■ Because the statute of repose lapsed prior to the crash of the subject aircraft, Plaintiffs' proper remedy, if they have one, is against the entity that performed the overhaul and/or repair of the tail rotor gear box. That entity is Hangar One; however, Plaintiffs have not named Hangar One as a party to this suit. This Court, then, is left to consider whether a suit can be maintained against Enstrom for a faulty overhaul by Hangar One. There is no evidence in the record that Hangar One was functioning as an agent of Enstrom. Establishing that such a relationship existed was part of Plaintiffs' intent in deposing a representative of Hangar One. As noted above, this Court initially denied Enstrom's Motion for Summary Judgment precisely to afford Plaintiffs an opportunity to conduct discovery on issues such as this. Six months passed, however, without any deposition being taken of Hangar One. In its Order of November 26, this Court stated that the six months had provided Plaintiffs with an adequate period of time in which to conduct discovery of Hangar One and that it would not again delay ruling on

Enstrom's Motion for Summary Judgment. Thus, the Court must consider only the evidence in the record, which does not include evidence of an agency relationship between Hangar One and Enstrom.

The Court further notes that even if such a relationship could be *prima facie* established, Plaintiffs have not alleged that the overhaul and/or repair were performed negligently (or that a new tail rotor gear box, improved in design over the original, was incorporated by Hangar One or Enstrom into the helicopter).

Finally, the fact that the overhaul and/or repair were performed in accordance with Enstrom guidelines as contained in its factory manuals is insufficient to establish Enstrom's liability. In *Kochins v. Linden–Alimak, Inc.*, 799 F.2d 1128 (6th Cir.1986), the Sixth Circuit was faced with a plaintiff whose injuries had occurred after the time period set by the statute of repose had lapsed. The plaintiff in that case attempted to hold the manufacturer liable on the theory that the inadequate instruction manual which had been sold to the owner of the product was defective in failing to warn or to provide proper instructions for the product. The Court held that the statute of repose would not apply separately to the manual, even though the manual may have been defective and was, in fact, delivered to the owner just a few years prior to the accident. The Sixth Circuit stated, "While we agree that, under Tennessee law, a manufacturer's failure to provide proper warnings or adequate instructions for the use of its product may render the product defective or unreasonably dangerous in use, even if the product contains no manufacturing or design defects, we do not agree that the warnings and instructions themselves are a 'product' within the meaning of [the statute of repose].... We agree, therefore, with the district court that appellant is time barred from proceeding against the ... defendants." *Id.* at 1135 (citation omitted).

In the case at hand, Enstrom's manuals apply to the servicing and overhaul of the tail rotor gear box of F–28A helicopters. To hold that Enstrom should be liable because its manuals issued within the period of repose did not provide an adequate means of correcting the design flaw of the critical component, would be to circumvent the statute of repose by providing a back door to sue for the design flaw—ostensibly not for the design flaw itself, but for the failure of the manuals to adequately correct the flaw. The result would be the evisceration of the statute of repose. If a plaintiff is precluded by the statute of repose from suing for a design flaw in a product, the plaintiff must also be precluded from suing for a failure to correct the design flaw, whether that failure be in the inadequacy of the text of a subsequently issued owner's manual or in repair guidelines subsequently sent to mechanics.

### IV. Conclusion

This Court's holding gives effect to the statute of repose without leaving a plaintiff without a remedy for a faulty repair. To hold that an overhaul of a critical component to original specifications tolls the statute of repose so as to allow claims for a design flaw that are otherwise time-barred, would be to eviscerate the statute of repose. To hold that the statute of repose is tolled for repair guidelines that fail to adequately rectify the design flaw would similarly eviscerate the statute of repose by providing a back-door means to sue for the design flaw. A plaintiff, however, is not left without a remedy. If the repair in question was the replacement of the original component with a component of a design distinct from the original, then the manufacturer of the re-designed component would be liable for a flaw in its design. Also, if an overhaul or repair which does not constitute a re-design of the component part is performed negligently, a plaintiff may sue the entity which performed the overhaul or repair. If, however, the repair is made to original specifications, a plaintiff cannot sue for a flaw in the design of the repaired part, since that flaw has been a continuing one that is part of the complete product and is precluded by the statute of repose.

In the instant case, an F–28A helicopter with an overhauled tail rotor gear box would not constitute a new F–28A helicopter, even though the gear box is a critical component of the helicopter. The manufacturer, Enstrom, did not re-acquire the helicopter and

completely re-furbish it prior to re-selling it to a new customer, as occurred in the cases cited by Plaintiffs which found the statutes of repose to be tolled under such circumstances. Plaintiffs have not alleged that a new tail rotor gear box of distinct design was incorporated into N9056, nor have they alleged the repairs were faulty, nor have they introduced evidence that Hangar One was an agent of Enstrom. Rather, their suit is based on a flawed design in the original product and is grounded in strict liability and negligence in that design.

Accordingly, after a careful review of the record, and the Court being otherwise fully advised in the premises, it is

ORDERED, ADJUDGED, and DE-CREED that Defendant Enstrom Helicopter Corporation's Motion for Summary Judgment be, and the same is hereby, GRANTED. This case is hereby DISMISSED, as the claims are time-barred by Florida's twelve-year statute of repose. It is further

ORDERED, ADJUDGED, and DE-CREED that Defendant Enstrom's Motion to Strike the Affidavit of Alex Butchkosky is DENIED as moot.

DONE and ORDERED.