Isaac FLORIAN and Jeffrey Florian, as Limited Guardian of Isaac Florian, an adult, Appellants,

v.

GATX RAIL CORPORATION, Appellee.

No. 91A04–1002–PL–77.

Court of Appeals of Indiana.

July 19, 2010.

Daniel J. Harrigan, Bayliff, Harrigan, Cord, Maugans & Cox, P.C., Kokomo, IN, William T. Sammons, Randle & Sammons, Rensselaer, IN, Attorneys for Appellant.

Thom W. Kramer, Buoscio, Pera & Kramer, Merrillville, IN, Attorney for Appellee.

## OPINION

MATHIAS, Judge.

Isaac Florian and Jeffrey Florian, as the limited guardian of Isaac Florian, ("Florian") appeal the White Circuit Court's entry of summary judgment in favor of defendant GATX Rail Corporation ("GATX") in an action resulting from an accident involving a motor vehicle operated by Florian. On appeal, Florian presents six issues, which we renumber and restate as the following:

I. Whether the trial court erred in concluding that GATX was in compliance with the applicable federal safety regulations;

II. Whether the trial court erred in concluding that Florian's common-law negligence claim was preempted by federal law; and

III. Whether the trial court erred in concluding that Florian's product liability claim is precluded by the applicable statute of repose.

We affirm.

### Facts and Procedural History

On the evening of January 6, 2006, Florian was driving south on County Road 1100 West near the town of Wolcott in White County, Indiana. This road intersected a railroad track at a single rail grade crossing. At the same time, a thirty-car train operated by the Toledo, Peoria, & Western Railway Co. ("TP & W")

was moving slowly across the tracks at the crossing. Trains regularly backed over the railroad crossing while conducting switching operations to pick up and drop off cars on a side track located to the west of County Road 1100 West. The TP & W train was stopped or had slowed down to prepare for a switching operation on the night in question. Included in the TP & W train was a tank car that was manufactured, owned, and maintained by GATX. The GATX tank car was manufactured in 1975 and was painted black. Florian's vehicle collided with the GATX tank car, trapping Florian underneath the car, resulting in serious injuries.

On November 21, 2007, Florian filed a complaint against TP & W, certain TP & W employees, and GATX. This complaint alleged that GATX was negligent: (1) for failing to apply retro-reflective sheeting to its tank car "per 49 C.F.R. 224.1 through 224.111," and (2) for otherwise "fail[ing] to enhance the detectability of its tank car by motorists when approaching a grade crossing at night." Appellant's App. p. 60.

On September 19, 2008, GATX filed a motion for summary judgment, to which Florian responded on November 3, 2008. A hearing on this motion was held on December 9, 2008. Florian then settled his claims against TP & W and its employees, and the claims against these defendants were subsequently dismissed with prejudice. On January 29, 2009, after Florian had settled his claims against TP & W and its employees, he filed an amended complaint naming GATX as the sole defendant and adding an additional claim of products liability.[1] On February 17, 2009, the trial court denied GATX's motion for summary judgment.

On July 20, 2009, GATX filed a second motion for summary judgment, to which Florian responded on July 23, 2008. After various filings by both parties, the trial court eventually held a hearing on the second motion for summary judgment on September 4, 2009.

On December 17, 2009, GATX filed a praecipe to withdraw the case from the trial court judge, claiming that the judge had not promptly ruled on its second motion for summary judgment.[2] The clerk of the White Circuit Court then certified GATX's praecipe to the Indiana Supreme Court. However, the trial court had already issued an order on December 16, 2009, granting GATX's second motion for summary judgment, but the order was not filed with the trial court clerk until December 21, 2009. When GATX learned of the ruling in its favor, it filed a motion to withdraw its praecipe. Florian filed an objection to the withdrawal and a motion to correct error on December 23, 2009. On January 21, 2010, our supreme court issued an order remanding jurisdiction of the case to the trial court judge. And on February 2, 2010, the trial court judge issued an order resuming jurisdiction, confirming its earlier grant of summary judgment in favor of GATX, and denying Florian's motion to correct error. Florian now appeals.

### Summary Judgment

As set forth by our supreme court in *Dugan v. Mittal Steel USA Inc.*, 929 N.E.2d 184 (Ind.2010):

---

1. A second amended complaint was filed on August 3, 2009, and was identical to the first amended complaint except that it named Jeffrey Florian, Isaac Florian's father and limited guardian, as a named plaintiff. Appellant's App. pp. 1259–63.

2. The TP & W defendants moved for change of venue from judge on December 3, 2007. As a result, Judge Thomas Milligan of the Montgomery Circuit Court was appointed special judge on December 11, 2007, and assumed jurisdiction over this case on December 14, 2007.

A party is entitled to summary judgment upon demonstrating the absence of any genuine issue of fact as to a determinative issue unless the non-moving party comes forward with contrary evidence showing an issue of fact for trial. An appellate court reviewing a trial court summary judgment ruling likewise construes all facts and reasonable inferences in favor of the non-moving party and determines whether the moving party has shown from the designated evidentiary matter that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. But a *de novo* standard of review applies where the dispute is one of law rather than fact.

*Id.* at 185–86 (citations omitted).

## I. GATX's Compliance With Federal Regulations

■ The trial court granted summary judgment in favor of GATX on Florian's claim that GATX was negligent because it failed to apply retro-reflective sheeting to its tank car pursuant to federal regulations. The federal regulations at issue are found in 49 C.F.R. part 224. Section 107 of this part provides in relevant part:

(a) *Railroad freight cars.* All railroad freight cars subject to this part must be equipped with retroreflective sheeting conforming to this part by November 28, 2015. If a car already has reflective material applied that does not meet the standards of this part, it is not necessary to remove the material unless its placement interferes with the placement of the sheeting required by this part.

(1) *New cars.* Retroreflective sheeting conforming to this part must be applied to all cars constructed after January 26, 2006, before the cars are placed in service.

(2) *Existing cars without retroreflective sheeting.* (i) If, as of October 28, 2005, a car subject to this part is not equipped on each side with at least one square foot of retroreflective sheeting as specified in paragraph (a)(3) of this section, retroreflective sheeting conforming to this part must be applied to the car at the earliest of the following two occasions occurring after November 28, 2005 or in accordance with paragraph (a)(2)(ii) of this section:

(A) When the car is repainted or rebuilt; or

(B) Within nine months (270 calendar days) after the car first undergoes a single car air brake test as prescribed by 49 CFR 232.305.

(ii) A freight rolling stock owner may elect not to follow the schedule in paragraph (a)(2)(i) of this section if, not later than January 26, 2006 the freight rolling stock owner submits to FRA a completed Reflectorization Implementation Compliance Report certifying that the cars in the owner's fleet subject to this part will be equipped with retroreflective sheeting as required by this part in accordance with the schedule specified in Table 3 of this section. . . .

TABLE 3 OF SUBPART B—ALTERNATIVE SCHEDULE FOR APPLICATION OF RETROREFLECTIVE MATERIAL TO FREIGHT CARS PER § 224.107(A)(2)(II)

| (A) | (B) (percent) |
| --- | --- |
| November 28, 2007 | 20 |
| November 28, 2008 | 30 |
| November 28, 2009 | 40 |
| November 28, 2010 | 50 |
| November 28, 2011 | 60 |
| November 28, 2012 | 70 |
| November 28, 2013 | 80 |
| November 28, 2014 | 90 |
| November 28, 2015 | 100 |

49 C.F.R. § 224.107 (footnote omitted).

Thus, the Federal Railroad Administration has deemed that all railroad freight cars must be equipped with retro-reflective sheeting by November 28, 2015. With re-

gard to new cars, the plan is simple: all cars constructed after January 26, 2006 must have retro-reflective sheeting applied before the cars are placed into service. However, with regard to existing freight cars, the owners of the cars have been given two options for applying the retro-reflective sheeting over time. The first option is set forth in paragraph (a)(2)(i), under which cars must have retro-reflective sheeting applied when the car is (A) repainted or rebuilt, or (B) within 270 days after the car undergoes a single car air brake test, whichever occurs first. The second option is set forth in paragraph (a)(2)(ii), under which the car owner may opt not to follow the first option and instead follow the schedule set forth in the table above.

Florian's complaint alleged that GATX was negligent for failing to comply with this federal regulation because GATX had not yet actually placed any retro-reflective sheeting on the tank car that Florian hit. We agree with the trial court that GATX was entitled to summary judgment with regard to this claim.

On January 26, 2006, GATX elected to use the second option provided for implementation, i.e., twenty percent of its cars were to have the retro-reflective sheeting attached by November 28, 2007, with one-hundred percent by November 28, 2015. On that date, GATX submitted to the FRA its reflectorization implementation compliance report, which was updated on November 28, 2007. This compliance report shows that, as of November 28, 2007, GATX had added retro-reflective sheeting to 42,581 of the 91,807 railroad freight cars it owned. Thus, as of 2007, GATX had added the required sheeting to 46.38% of its cars, well ahead of the twenty percent required by 49 C.F.R. § 224.107(a)(2)(ii).

Florian notes that GATX elected to use the second option only after this accident occurred. But even under the first option, GATX did not have to apply the retro-reflective sheeting to the tank car Florian hit until either the car was repainted or rebuilt or within 270 days after the car underwent an air brake test. GATX designated evidence showing that the tank car at issue had not been repainted or rebuilt since November 28, 2005, and did not undergo an air brake test until June 29, 2006. And the required sheeting was applied the same day as the air brake test even though GATX had 270 days from the date of the air brake test to apply such sheeting.

In other words, GATX was in compliance with either implementation schedule. The fact that the particular car Florian hit did not yet have retro-reflective sheeting applied does not mean that GATX was in violation of the implementation schedules. To the contrary, both implementation schedules clearly provide for the fact that not all freight cars will have the required sheeting applied immediately. Therefore, the trial court properly concluded that GATX was entitled to judgment as a matter of law with regard to Florian's claim that GATX was negligent for failing to apply retro-reflective sheeting as required by federal regulations.

## II. Federal Preemption

Florian's main argument on appeal is that the trial court erred in concluding that Florian's common-law negligence claim was preempted by federal law.

### A. Preemption Generally

■ Because federal law is the supreme law of the land under the Supremacy Clause of the United States Constitution, state laws that interfere with or are contrary to federal law are invalidated under the preemption doctrine. *Kuehne v. United Parcel Serv., Inc.*, 868 N.E.2d 870, 873 (Ind.Ct.App.2007). "[A] cardinal rule of preemption analysis is the 'starting pre-

sumption that Congress d[id] not intend to supplant state law.'" *Id.* (quoting *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 654, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995)). This presumption against preemption takes on added significance where federal law is claimed to bar state action in fields of traditional state regulation. *Id.* "Accordingly the historic police powers of the States are not to be superseded by a Federal Act 'unless that was the clear and manifest purpose of Congress.'" *Id.* (quoting *Micronet, Inc. v. Ind. Util. Regulatory Comm'n*, 866 N.E.2d 278, 285 (Ind.Ct.App. 2007)).

■ There are three variations of the federal preemption doctrine: (1) express preemption, which occurs when a federal statute expressly defines the scope of its preemptive effect; (2) field preemption, which occurs when a pervasive scheme of federal regulations makes it reasonable to infer that Congress intended exclusive federal regulation of the area; and (3) conflict preemption, which occurs when it is either impossible to comply with both federal and state or local law, or where state law stands as an obstacle to the accomplishment and execution of federal purposes and objectives. *Id.*

### B. The Federal Railroad Safety Act

The federal statutes and regulations at issue in the present case relate to the Federal Railroad Safety Act ("FRSA"). As we recently explained in *DeHahn v. CSX Transp., Inc.*, 925 N.E.2d 442, 448 (Ind.Ct.App.2010), Congress enacted FRSA in 1970 "to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." (quoting *Randall v. Norfolk S. Ry. Co.*, 800 N.E.2d 951, 954 (Ind.Ct.App.2003) (quoting 49 U.S.C. § 20101)). FRSA grants the Secretary of Transportation the authority to "prescribe regulations and issue orders for every area of railroad safety." *Id.* (quoting *Randall*, 800 N.E.2d at 954 (quoting 49 U.S.C. § 20103(a))).

Importantly, FRSA contains an express preemption provision, which states in relevant part:

(a) **National uniformity of regulation.**—(1) Laws, regulations, and orders related to railroad safety ... shall be nationally uniform to the extent practicable.

(2) A State may adopt or continue in force a law, regulation, or order related to railroad safety ... until the Secretary of Transportation (with respect to railroad safety matters) ... prescribes a regulation or issues an order covering the subject matter of the State requirement. A State may adopt or continue in force an additional or more stringent law, regulation, or order related to railroad safety ... when the law, regulation, or order—

(A) is necessary to eliminate or reduce an essentially local safety ... hazard;

(B) is not incompatible with a law, regulation, or order of the United States Government; and

(C) does not unreasonably burden interstate commerce.

49 U.S.C. § 20106.[3] Pursuant to this preemption statute, the Federal Railroad Ad-

---

**3.** 49 U.S.C. § 20106(b) contains a provision clarifying that subsection 20106(a) shall not be construed to preempt a state tort action alleging that a party has failed to comply with a federal regulation or order, has failed to comply with its own plan, rule, or standard that it created pursuant to a federal regulation or order, or has failed to comply with a state law, regulation, or order that is not incompatible with subsection (a)(2). Florian makes no argument that his claim falls within this provision.

ministration promulgated 49 C.F.R. § 224.13, which provides:

> Under 49 U.S.C. 20106, issuance of this part [i.e., 49 C.F.R. pt. 224] preempts any State law, rule, regulation, or order covering the same subject matter, except an additional or more stringent law, rule, regulation, or order that is necessary to eliminate or reduce an essentially local safety hazard; that is not incompatible with a law, rule, regulation, or order of the United States Government; and that does not unreasonably burden interstate commerce.

The question here is whether Florian's common-law negligence claim[4] against GATX is preempted by the federal regulations set forth in 49 C.F.R. part 224.

We recently addressed FRSA preemption in *DeHahn,* in which we explained that "FRSA, by its own statutory language, preempted state laws and regulations only if the Secretary of Transportation had prescribed a regulation or issued an order covering the subject matter' of the state law or regulation." 925 N.E.2d at 449 (quoting *CSX Transp., Inc. v. Easterwood,* 507 U.S. 658, 662, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993)). We further noted that the *Easterwood* Court explained that:

> To prevail on the claim that the regulations have preemptive effect, petitioner must establish more than that they "touch upon" or "relate to" that subject matter, for "covering" is a more restrictive term which indicates that preemption will lie only if the federal regulations substantially subsume the subject matter of the relevant state law.

507 U.S. at 664–65, 113 S.Ct. 1732. With this background in mind, we turn to the specific question of federal preemption presented in the present case.

### C.  Florian's Negligence Claim

■ Section 224.1(a) of 49 C.F.R. explains that the purpose of 49 C.F.R. part 224 is "to reduce highway-rail grade crossing accidents and deaths, injuries, and property damage resulting from those accidents, by enhancing the conspicuity of rail freight rolling stock so as to increase its detectability by motor vehicle operators at night and under conditions of poor visibility." To accomplish this goal, 49 C.F.R. part 224 sets forth a plan to achieve "cost-effective mitigation of collision risk at highway-rail grade crossings" by establishing "the duties of freight rolling stock owners ... and railroads to progressively apply retroreflective material to freight rolling stock, and to periodically inspect and maintain that material." 49 C.F.R. § 224.1(b). Further, "[f]reight rolling stock owners, however, are under no duty to install, clean or otherwise maintain, or repair reflective material except as specified in this part." *Id.*

As set forth above, 49 C.F.R. § 224.107 sets forth two options for the progressive application of retro-reflective sheeting to railroad freight cars. And under either option, GATX was in compliance. Florian nevertheless argues that his common-law negligence claim cannot be preempted because, at the time of his accident, GATX had not yet applied any retro-reflective sheeting to the tank car that he hit. In other words, Florian argues that although a plaintiff could not bring a common-law negligence claim arising out of an accident with a car to which retro-reflective sheeting had been applied, he should be able to

---

**4.**  "Legal duties imposed on railroads by the common law fall within the scope of [the] broad phrases" "law, rule, regulation, [and] order[.]"  *CSX Transp., Inc. v. Easterwood,* 507 U.S. 658, 664, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993) (citing predecessor statute to 49 U.S.C. § 20106).

proceed with his negligence claim because GATX had not yet applied any retro-reflective sheeting to the specific tank car that he hit. We disagree.

The preemption provision of 49 C.F.R. § 224.13 is not limited in scope to only those cars to which the retro-reflective sheeting has been applied. It instead explicitly preempts "any State law, rule, regulation, or order covering the same subject matter," i.e. increasing the conspicuity of freight cars by motorists driving at night and under conditions of poor visibility. *See* 49 C.F.R. § 224.1(a). Florian's negligence action is based on his claim that GATX failed to "enhance the detectability of its tank car by motorists when approaching a grade crossing at night." Appellant's App. p. 60. This is *precisely* the subject matter covered by 49 C.F.R. part 224. If Florian were succeed in his negligence complaint, GATX would effectively be required to apply retro-reflective sheeting to all of its rail cars immediately or else face liability under common-law negligence. *See Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 881, 120 S.Ct. 1913, 146 L.Ed.2d 914 (2000) (holding that plaintiff's common law tort action constituted a rule of state tort law subject to preemption by federal regulations). Such a duty directly conflicts with the progressive schedule set forth in 49 C.F.R. § 224.107. It also directly conflicts with 49 C.F.R. § 224.1(b) which explicitly states that rail freight car owners "are under no duty to install ... reflective material *except as specified in this part.*" (emphasis added). In short, the federal government has issued regulations which clearly cover the subject matter of Florian's negligence action. Florian's neg-

ligence claim is therefore preempted by these federal regulations.

We find support for our conclusion in *Geier, supra.* In that case, the plaintiff was injured in an automobile accident and sued the defendant manufacturer, claiming that the car had been negligently and defectively designed because it lacked a driver's side airbag. The manufacturer claimed that the plaintiff's claim was preempted by a federal motor vehicle safety standard promulgated by the federal Department of Transportation. The Court held that the plaintiff's common law tort action depended upon claims that manufacturers had a duty to install an airbag when they manufactured the car involved in the accident, and "such a state law—i.e., a rule of state tort law imposing such a duty—by its terms would have required manufacturers of all similar cars to install airbags rather than other passive restraint systems." 529 U.S. at 881, 120 S.Ct. 1913. This, the Court held, presented "an obstacle to the variety and mix of devices that the federal regulation sought." Specifically, it would have required the manufacturer to install an airbag even though the applicable federal standard at that time required only that ten percent of a manufacturer's nation-wide fleet be equipped with any passive restraint device at all. *Id.* "It thereby also would have stood as an obstacle to the gradual passive restraint phase-in that the federal regulation deliberately imposed." *Id.* Thus the Court concluded that the plaintiff's action was preempted by the applicable federal regulation.[5] *Id.* at 886, 120 S.Ct. 1913; *see also Hurley v. Motor Coach Indus.*, 222 F.3d

5. Although the Court held that the plaintiff's claim was preempted under "conflict preemption" principles, it first concluded that plaintiff's claim was not preempted by the Safety Act's express preemption provision because the Act also contained a "savings clause"

which provided that compliance with a federal safety standard " 'does not exempt any person from any liability under common law.' " *Id.* at 868, 120 S.Ct. 1913 (quoting 15 U.S.C. § 1397(k)).

377, 381–82 (7th Cir.2000) (plaintiff's claim that bus he was driving was unreasonably dangerous because it did not contain three-point safety belt and airbags was preempted because it conflicted with federal crashworthiness standard which included option of two-point safety belt); *Griffith v. Gen. Motors Corp.*, 303 F.3d 1276, 1280–82 (11th Cir.2002) (plaintiff's claim that truck's seatbelt system was defectively designed because it had only a center seat lap belt instead of a lap-shoulder belt was preempted by federal safety standards which specifically allowed the lap-belt only option); *Roland v. Gen. Motors Corp.*, 881 N.E.2d 722, 728–29 (Ind.Ct.App.2008) (plaintiff's claim that manufacturer defectively designed center rear-seat safety belt was preempted because it conflicted with comprehensive federal safety standards that gave manufacturer option to install a lap-only safety belt).

Florian argues that *Geier*, and the cases that followed it, are distinguishable because, in those cases, the manufacturers chose and actually implemented one of several options permitted by the applicable federal regulations, whereas here GATX had not yet installed any reflectors on the tank car involved in the accident. However, *Geier* was not based solely on the fact that the manufacturers chose and implemented a permissible option. It was instead premised on the fact that the plaintiff's tort action, i.e. that the car manufacturer should have installed airbags, would impose a duty on the manufacturer to install airbags on all similar cars, which presented an obstacle to the "gradual passive restraint phase-in" imposed by the federal regulations. 529 U.S. at 881, 120 S.Ct. 1913.

The same is true here. Florian's claim that GATX was negligent for failing to install retro-reflective sheeting on the tank car involved in the collision would impose an effective obligation on GATX, and other rail-car owners and operators, to apply retro-reflective sheeting on all of its tank cars or else face liability in Indiana. *See Geier*, 529 U.S. at 881, 120 S.Ct. 1913. This presents an obstacle to the gradual retro-reflectorization phase-in deliberately imposed by 49 C.F.R. § 224.107(a), and directly conflicts with the "no duty" provision of 49 C.F.R. § 224.1(b). Florian's common-law negligence claim is therefore preempted.

### D. Preemption Exception

Still, even if a state law, rule, regulation, or order covers the same subject matter, it is not preempted if: (1) it is an additional or more stringent law, rule, regulation, or order; (2) that is necessary to eliminate or reduce an essentially local safety hazard; (3) that is not incompatible with a law, rule, regulation, or order of the federal government; and (4) that does not unreasonably burden interstate commerce. 49 C.F.R. § 224.13. Here, there is no indication that the rail crossing where Florian's accident occurred was "an essentially local safety hazard." Florian's negligence claim does not address a particular local hazard. "The common law of negligence provides a general rule to address all hazards caused by lack of due care, not just those owing to unique local conditions." *Easterwood*, 507 U.S. at 675, 113 S.Ct. 1732; *see also Price v. Nat'l R.R. Passenger Corp.*, 14 P.3d 702, 707 (Utah Ct.App. 2000) (holding that the "local safety hazard" exception allows states to regulate train speed legislatively or administratively to ameliorate the effect of a local safety hazard, but preempts state tort claims based on excessive train speed). And even if Florian's claim did relate to an "essentially local hazard," Florian's negligence claim is, as noted, incompatible with the progressive reflectorization schedule set forth in 49 C.F.R. § 224.107. Thus, the

local safety hazard provision does not apply to save Florian's claim from preemption.

### E. Easterwood and Shanklin

Further, we agree with the trial court that Florian's reliance on *Easterwood, supra,* and *Norfolk Southern Railway Co. v. Shanklin,* 529 U.S. 344, 120 S.Ct. 1467, 146 L.Ed.2d 374 (2000), is misplaced. Although both of these cases provide guidance on the subject of federal preemption of state law claims, neither of these cases supports Florian's position. In both *Easterwood* and *Shanklin,* the federal regulations at issue (regarding warning devices at railroad crossings) applied, and state law claims were thus preempted, only if federal funds were used in the installation of the warning devices. *See Easterwood,* 507 U.S. at 671, 113 S.Ct. 1732; *Shanklin,* 529 U.S. at 353–54, 120 S.Ct. 1467. This is unlike the regulations at issue in the present case, which apply, subject to certain exceptions not relevant here, "to all railroad freight cars and locomotives that operate over a public or private highway-rail grade crossing and are used for revenue or work train service." 49 C.F.R. § 224.3.

In fact, the regulations at issue in the present case are akin to the speed regulations in *Easterwood,* which the Court held did preempt the plaintiff's excessive speed claim. 507 U.S. at 674–75, 113 S.Ct. 1732. The speed regulations set maximum allowable speeds for "all freight and passenger trains for each class of track on which they travel," and did not apply only when certain conditions, such as federal funding, had been met. *Id.* at 673, 113 S.Ct. 1732. Here too, the retro-reflective sheeting regulations apply to *all* railroad freight cars, but call for a scheduled, gradual implementation of the sheeting requirement. In short, *Shanklin* does not support Florian's

argument, and *Easterwood* actually supports our conclusion that Florian's claim is preempted by the applicable federal regulations.

In summary, Florian's negligence claim against GATX is preempted by the regulations regarding retro-reflective sheeting found in 49 C.F.R. part 224. Therefore, the trial court did not err in granting summary judgment in favor of GATX on this claim.

### III. Statute of Repose

■ Florian also argues that the trial court erred in concluding that Florian's product liability claim against GATX is precluded by the applicable statute of repose, which states in relevant part:

(a) This section applies to all persons regardless of minority or legal disability. Notwithstanding IC 34–11–6–1 [regarding persons under legal disabilities], this section applies in any product liability action in which the theory of liability is negligence or strict liability in tort.

(b) Except as provided in section 2 of this chapter [regarding asbestos-related claims], a product liability action must be commenced:

(1) within two (2) years after the cause of action accrues; or

(2) within ten (10) years after the delivery of the product to the initial user or consumer.

However, if the cause of action accrues at least eight (8) years but less than ten (10) years after that initial delivery, the action may be commenced at any time within two (2) years after the cause of action accrues.

Ind.Code § 34–20–3–1 (1999).[6]

■ We have held that "the period of limitations for a product liability action under [the predecessor statute to Indiana

---

**6.** Although this statute "uses the disjunctive

'or' between the two year statute of limita-

Code section 34–20–3–1] begins from the time the product is 'delivered from the manufacturer, wholesaler, retailer or distributor to the first consuming entity,' and not from the time the product is delivered to retailers or intermediaries." *Ferguson v. Modern Farm Sys., Inc.*, 555 N.E.2d 1379, 1386 (Ind.Ct.App.1990) (quoting *Whittaker v. Federal Cartridge Corp.*, 466 N.E.2d 480, 482 (Ind.Ct.App.1984)).

In the present case, the designated evidence clearly shows that the GATX tank car Florian collided with was built and delivered to the first consumer in 1975 and had therefore been in service for over thirty years at the time of Florian's accident in 2006. Florian does not deny this, but claims that if a "new component that caused the machine to be defective was incorporated into the equipment within the ten-year window," then the statute of repose starts anew from the date that the "new component" was added. Appellant's Br. p. 38. Florian's claim is not without support.

In *Stump v. Ind. Equip. Co.*, 601 N.E.2d 398, 402 (Ind.Ct.App.1992), the plaintiff claimed that the defect that caused his injuries was not a defect which existed at the time the product was initially delivered; instead, the alleged defect was the result of rewiring that occurred subsequent to the initial delivery. The court therefore held that the plaintiff's action involving defective equipment which was installed after the initial delivery, as opposed to a defect present at the time of the initial delivery, was not subject to the ten-year statute of repose which begins to run from the time of initial delivery. *Id.*

And in *Richardson v. Gallo Equip. Co.*, 990 F.2d 330, 331 (7th Cir.1993), the court, applying Indiana law, concluded that "any reconstruction or reconditioning (as distinct from a mere repair . . .) which has the effect of lengthening the useful life of a product beyond what was contemplated when the product was first sold starts the statute of repose running anew." If this were not the case, "the statute would create an inefficient incentive to reconstruct or recondition old products rather than build new ones, in order to reduce expected liability costs; for under such a regime a product rebuilt after ten years would be immunized from liability." *Id.* Thus, merely by incorporating a defective component into an old product, the defendant cannot obtain the protection from suit that the statute of repose gave the old product. *Id.*

Here, Florian claims that a "new component" was incorporated into the tank car because GATX repainted the car within ten years of his accident. The designated evidence establishes that tank car was painted black when it was delivered. The tank car was then repainted black in 1996, and received an extensive touch-up of black paint in 2001.

We are simply unable to agree with Florian that this repainting constitutes incorporation of a "new component" to the tank car. Florian alleged in his complaint that the tank car was defective because of its "black color and lack of retroreflective paint or paneling." Appellant's App. p. 1261. The tank car was subsequently repainted black. This painting constitutes simple repair and maintenance that did not

tions and the ten year statute of repose, the Indiana Supreme Court has interpreted the statute to join the two clauses instead with the conjunctive 'and.' " *Ferguson v. Modern Farm Sys., Inc.*, 555 N.E.2d 1379, 1385 (Ind.Ct.App. 1990) (citing *Dague v. Piper Aircraft Corp.*, 275 Ind. 520, 525–26, 418 N.E.2d 207, 210–11 (1981)) (both referring to Ind.Code § 33–1-

1.5–5, the predecessor statute to Ind.Code § 34–20–3–1). "Unless the ten-year period was intended to be an outer cutoff, there would be no need to state again that the plaintiff has two years in which to bring his action if his injury occurs during the ninth or tenth year of the life of the product." *Id.*

materially alter the tank car, not a "new component."[7] *Cf. Richardson*, 990 F.2d at 331 (new component was a back-up alarm installed on a fork-lift seven years after its manufacture); *Stump*, 601 N.E.2d at 402 (defect which defendant alleged caused his injury was wiring around a safety switch and all parties agreed that switch had been rewired subsequent to initial delivery).

Because the tank car was delivered to the initial consumer more than ten years prior to Florian's accident, and because the repainting of the tank car did not constitute a "new component," we agree with the trial court that Florian's products liability claim regarding the tank car is barred by the ten-year statute of repose found in Indiana Code section 34–20–3–1. The trial court therefore properly granted summary judgment in favor of GATX on Florian's product liability claim.

### Conclusion

The trial court did not err when it concluded that GATX was in compliance with the applicable federal safety regulations regarding retro-reflective sheeting, nor did the trial court err when it concluded that Florian's common-law negligence complaint was preempted by the federal safety regulations regarding retro-reflective sheeting. Finally, the trial court did not err when it concluded that Florian's product liability claim was precluded by the applicable statute of repose. Therefore, the trial court properly granted summary judgment in favor of GATX.

Affirmed.

RILEY, J., and BRADFORD, J., concur.

---

**7.** We also cannot ignore that, in his complaint, Florian specifically alleged that "the tank car has not been substantially altered in its condition since defendant GATX had placed said railcar in the stream of commerce[.]" Appellant's App. p. 1261.